EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2026 TSPR 29 |
| | 217 DPR ___ |
| Hon. Ginny M. Vélez Carreras | |

Número del Caso: AD-2024-0001

Fecha: 20 de marzo de 2026

Oficina de Asuntos Legales
Oficina de Administración de los Tribunales:

    Lcda. Isabel E. Sánchez Del Campo Ladrón De Guevara
    Asesora Legal

    Lcda. Carmen Ana Pesante Martínez
    Investigadora

Representantes legales de la Hon. Ginny M. Vélez Carreras:

    Lcdo. Virgilio Mainardi Peralta
    Lcdo. José A. Rivera Rodríguez
    Lcdo. Luis M. García Tous

Comisión de Disciplina Judicial:

    Lcda. Lourdes Velázquez Cajigas
    Presidenta

Comisionadas y Comisionados Asociados:

    Lcda. Ygrí Rivera Sánchez
    Lcda. Aleida Varona Méndez
    Lcdo. Jorge Toledo Reyna
    Lcdo. Reinaldo O. Catinchi Padilla

Materia: Disciplina Judicial – Improcedencia de una acción disciplinaria contra un juez o una jueza por cometer un error de derecho.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Ginny M. Vélez
Carreras

AD-2024-0001

El Juez Asociado Señor Candelario López emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 20 de marzo de 2026.

**Hay una razón por la cual la toga es negra. Representa sobriedad, dignidad y, sobre todo, imparcialidad. Se gana por méritos, no por aplausos. Este caso es reflejo perfecto de los problemas con el andamiaje administrativo actual del Poder Judicial que hacen necesaria e indispensable nuestra intervención.**

En el pasado se ha dicho que el ejercicio del poder sin justificaciones racionales y sin apego a nociones éticamente orientadas es solo arbitrariedad, pura fuerza institucionalizada. Se ha dicho, además, que, en ausencia de tales nociones, la toga no da la razón a quien la viste, ni capacidad para resolver una controversia de manera justa. Solo confiere el poder para decidir y para obligar a cumplir lo decidido.[1] A petición de la Oficina de Administración de los Tribunales (OAT), nos corresponde

---

[1] S. Steidel Figueroa, *Ética para juristas: ética y responsabilidad disciplinaria*, San Juan, Ediciones Situm, 2019, pág. 27.

hoy determinar si, en el contexto de un trágico evento que cobró la vida de una víctima de violencia de género, debemos abandonar los principios deontológicos que rigen la ética judicial, y ejercitar ese poder adoptando como criterio adjudicativo que el fin justifica los medios.

Rechazamos enérgicamente la recomendación de la OAT, pues, al evaluar la totalidad de las circunstancias, es más que evidente que estamos ante un error en la aplicación del derecho --revisable en los foros correspondientes--, no ante conducta impropia de una magistrada. Validar la pretensión de la OAT e imponer una sanción en este caso equivaldría a derogar principios que garantizan la independencia judicial que todos en esta Curia, en algún momento, hemos asegurado defender, en favor de una política disciplinaria que fomentará la proliferación de órdenes de protección que pudieran ser improcedentes, ante el temor de que un error de derecho cueste la toga.

Ante la absoluta ausencia de los elementos de intencionalidad y favoritismo que sirven de única llave a una acción disciplinaria de esta naturaleza, rechazamos además el proceso seguido para recomendar la sanción. Con el único objetivo de aplacar la creciente presión pública por hallar un culpable --el que sea--, la OAT se embarcó en una investigación dirigida a un resultado preconcebido. Exacerbando el problema, llegó a este sin contar con la prueba clara, robusta y convincente necesaria para demostrar que la magistrada se desvió deliberadamente del

derecho aplicable, o que lo hizo para favorecer al imputado y eventual feminicida.

El curso de acción recomendado por la OAT requiere necesariamente el uso arbitrario de la fuerza institucionalizada para obtener un resultado particular, avalando en el camino el sesgado procedimiento investigativo empleado, que condujo a la igualmente injusta recomendación de la Comisión de Disciplina Judicial. Simplemente no podemos endosar un curso de acción que, tomado para aplacar la opinión pública, constituiría de por sí una violación de los Cánones 2 y 8 de Ética Judicial.

I

Para poner en el contexto adecuado la determinación que hoy tomamos, es necesario examinar las circunstancias ante la cuales la OAT estimó meritorio desviarse de las normas deontológicas aplicables, e iniciar su investigación y recomendar acción disciplinaria contra la jueza Ginny M. Vélez Carreras.

El 17 de agosto de 2010, la jueza Vélez Carreras fue admitida al ejercicio de la abogacía en nuestra jurisdicción, y, el 25 de febrero de 2011, fue admitida como Notario Público. Obtuvo el consentimiento del Senado de Puerto Rico para convertirse en Jueza Municipal del Tribunal de Primera Instancia el 21 de diciembre de 2020 y, el 4 de enero de 2021, juramentó a este puesto, siendo asignada a la Región Judicial de Ponce mediante Orden Administrativa Núm. AJ2021-102 de 5 de abril de 2021. Durante su participación en el Programa de Formación

Inicial de la Judicatura tomó varios cursos sobre la Ley 54, *infra*, aspectos prácticos sobre la fianza, el Programa de Servicios con Antelación a Juicio (PSAJ), la Regla 6 de Procedimiento Criminal, y sobre órdenes de protección y violencia doméstica. **No surge del expediente ante nuestra consideración que la Academia Judicial hubiese impartido seminarios relacionados a la imposición de medidas de seguridad bajo la Ley 99-2009, *infra*, en casos de violencia doméstica.** Sí revela que en los tres años que transcurrieron desde su juramentación en enero de 2021 hasta principios del 2024, la jueza Vélez Carreras ha participado activamente de varios congresos y ofrecimientos de la Academia Judicial. **Además, desde que comenzó a fungir como jueza municipal ha atendido múltiples casos de violencia doméstica.**

Surge del expediente que, el 7 de septiembre de 2023, la señora Linnette Morales Vázquez solicitó una orden de protección contra su expareja, Wilfredo Hiram Santiago Figueroa, al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la *Ley para la prevención e intervención con la violencia doméstica*, 8 LPRA sec. 601 *et seq.* (Ley 54). En específico, alegó que se había separado del señor Santiago Figueroa el 25 de julio de ese año, pero este no aceptó el fin de la relación y asumió una actitud controladora. Alegó que no tuvo más remedio que pernoctar fuera de su residencia al no sentirse segura, "ya que hace más de una semana están irrumpiendo

en las noches" en su hogar. Añadió que el peticionado la esperó frente a su casa hasta las 6:00 a.m., hora en que ella llegó para prepararse para ir a trabajar, y la recibió con insultos, intimidación y palabras soeces. De igual modo, alegó que el señor Santiago Figueroa acudía a su trabajo a insultarla, que las cámaras de seguridad de su hogar fueron dañadas y que le hicieron daño a su vehículo, siendo el peticionado la única persona con acceso.

La señora Morales Vázquez declaró que al momento en que presentó su solicitud de orden de protección llevaba seis días durmiendo fuera de su hogar con sus hijos, y que temía por su seguridad y la de estos.

Examinada la petición de la señora Morales Vázquez, el Hon. Carlos Quiñones Capacetti, Juez Municipal asignado a la Sala de Yauco, emitió una orden de protección *ex parte* con vigencia hasta el 26 de septiembre de 2023, fecha para la cual citó a las partes para vista final. Celebrada esta ante el Hon. Ángel Candelario Cáliz, Juez Municipal de la Sala de Ponce, y escuchada la prueba desfilada y las argumentaciones de la defensa, la orden de protección fue extendida por seis meses, esto es, hasta el 26 de marzo de 2024.

Surge del expediente que, el 10 de enero de 2024, la señora Morales Vázquez denunció que días antes, el 7 de enero, el señor Santiago Figueroa violó la orden de protección expedida en su contra al personarse a la residencia de la peticionaria, perturbando su

tranquilidad.  Tras la investigación de rigor, el fiscal Gariell Rosario Guzmán autorizó la presentación de cargos bajo el Art. 2.8 de la Ley 54, por violación a una orden de protección.

El investigador de la Unidad de Violencia Doméstica de la Comandancia de Ponce, agente Osvaldo Serrano, presentó una Solicitud de Información sobre el imputado en el Sistema de Información de Justicia Criminal, que arrojó condenas previas por los delitos de agresión grave y tentativa de incendio bajo el Código Penal, y maltrato bajo el Art. 3.1 de la Ley 54.[2] **El Ministerio Público, a través del fiscal Rosario Guzmán, y la Intercesora Legal en procedimientos de violencia doméstica, Wanda López Bonilla, también conocían el historial delictivo del señor Santiago Figueroa.**

Como parte de los procesos, el PSAJ presentó su *Informe de Evaluación y Recomendaciones* (Informe de PSAJ), preparado en atención al cargo de violación al Art. 2.8 de la Ley 54.  Surgen del informe los antecedentes penales descritos, y que la violación de este artículo conllevaba supervisión electrónica.  Ante la condena previa del señor Santiago Figueroa por violaciones a la Ley 54, PSAJ recomendó estricta observancia del protocolo de distancia de 30 minutos entre las partes; **nada mencionó en cuanto a**

---

[2] Del *Historial de Convicciones* del señor Santiago Figueroa surge que le fueron impuestas condenas de 10 años por agresión grave, 8 años por incendio agravado y 2 años por maltrato, las cuales cumplió de manera concurrente. Véase, Apéndice del *Informe de investigación* de la Oficina de Asuntos Legales de OAT. (Apéndice del Informe), pág. 162.

**la necesidad de imponer medidas de supervisión electrónica debido a esta condena anterior.**

En la misma fecha, 10 de enero de 2024, se celebró la vista de causa probable para arresto bajo la Regla 6 de Procedimiento Criminal contra el señor Santiago Figueroa, atendida por la jueza Vélez Carreras, con la comparecencia por el Ministerio Público de la entonces Fiscal Auxiliar I, Alexandra Aulet Morales, ascendida desde entonces al puesto de Fiscal Auxiliar II. Comparecieron, además, el acusado junto con su abogado, el licenciado Edwin Caraballo Caraballo, la Intercesora Legal, señora López Bonilla, la señora Morales Vázquez y su hermano, Luis Miguel Morales Vázquez.

Durante su interrogatorio directo, la señora Morales Vázquez declaró que se encontraba separada del acusado desde solo unos días antes de la vista, el 6 de enero de 2024, lo cual fue inmediatamente advertido por la jueza Vélez Carreras durante la vista. Luego de que la Fiscal aclarara para el récord que la relación en efecto terminó en esa fecha, la señora Morales Vázquez admitió que volvió a tener comunicación con el acusado porque este le dijo "de alguna manera u otra" que iba a morir de cáncer, sintió lástima por él e intentaron arreglar la relación. Sin embargo, relató que, el 7 de enero de 2024, el señor Santiago Figueroa acudió a su residencia y cerró la llave de paso de agua, y que ella y su hermano lo sorprendieron escondido detrás de unos árboles, tras lo cual huyó en su

vehículo. La señora Morales Vázquez finalizó su testimonio declarando que llamó al cuartel de la Policía porque tenía miedo de que el señor Santiago Figueroa intentara hacer esto de nuevo estando ella sola. Estos hechos fueron corroborados mediante el testimonio de su hermano.

Culminado el desfile de prueba, la fiscal Aulet Morales argumentó que al momento de los hechos estaba vigente la orden de protección, pero de la prueba surgió que previamente habían convivido. Por tal razón, solicitó que, de entenderse que no estaban presentes los elementos requeridos para encontrar causa para arresto por violación a la orden de protección bajo el Art. 2.8 de la Ley 54, se le encontrara causa bajo el Art. 3.1 por maltrato en su modalidad psicológica. En atención a esto, la jueza Vélez Carreras no encontró causa bajo el Art. 2.8, pero sí bajo el Art. 3.1, por lo que impuso una fianza de $5,000. Erróneamente --para esa fecha--, vertió para el récord que este delito no conllevaba supervisión electrónica. **A preguntas de la jueza Vélez Carreras en cuanto a si debía considerar algo más, la fiscal Aulet Morales indicó que dejaba la imposición de medidas de seguridad a su discreción.**[3]

**La fiscal Aulet Morales no informó a la jueza Vélez Carreras sobre el historial delictivo del señor Santiago Figueroa, su condena previa de maltrato, ni sobre el**

---

[3] El Informe de Investigación describió este intercambio como sigue: "Asimismo, la Jueza preguntó si había algo que el tribunal tenía que... (tener en cuenta), pero fue interrumpida por la fiscal, quien indicó: 'Lo dejamos a su discreción, Honorable Juez'". Véase pág. 15.

**requisito de supervisión electrónica por ser reincidente en un delito tipificado bajo la Ley 54. Tampoco solicitó reconsideración de la determinación de no imponer supervisión electrónica, ni inició un proceso de revisión de fianza.**

Como destaca la OAT, durante la vista de causa probable presidida por la jueza Vélez Carreras, esta tenía disponible el Informe de PSAJ, del cual surgía una condena previa del acusado por violaciones al Art. 3.1 de la Ley 54. Según adelantado, el informe también contenía las recomendaciones de PSAJ, **orientadas a la violación de una orden de protección bajo el Art. 2.8 de la Ley 54 por el cual se acusó originalmente al señor Santiago Figueroa.**

Así las cosas, se señaló Vista con antelación a la vista preliminar para el 17 de enero de 2024, y la Vista Preliminar para el 24 de enero de 2024.

En esa fecha comparecieron a la Vista Preliminar ante el Hon. Rubén A. Serrano Santiago la fiscal Ruth Myriam Pérez Pérez por el Ministerio Público, la señora Morales Vázquez y su hermano, así como el imputado señor Santiago Figueroa y su abogado. No estuvo presente el agente Serrano. Sin embargo, la vista no pudo celebrarse luego de que el Ministerio Público solicitara una enmienda sustancial a la denuncia, pues no fue enmendada durante la vista anterior para conformarla al Art. 3.1 de la Ley 54

bajo el cual se encontró causa para el arresto del imputado.[4]

Así enmendada la denuncia, se recalendarizó la vista preliminar para el 28 de febrero de 2024, **con la anuencia del Ministerio Público.**

El 24 de enero de 2024 --esto es, a 14 días de celebrada la vista de causa probable para arresto--, el Ministerio Público finalmente presentó *Moción urgente en solicitud de imposición de supervisión electrónica.* En esta, **solicitó por primera vez en los procedimientos que se impusiera supervisión electrónica al imputado,** bajo el fundamento de que fue hallado culpable y cumplió condena de diez (10) años por delitos de la misma naturaleza que los aquí imputados. El Ministerio Público adujo que esta medida era condición obligatoria al momento de conceder la fianza, por lo que solicitó su imposición en esta etapa de los procedimientos.

Como sabemos, esta moción nunca fue atendida: en esa misma fecha, la señora Morales Vázquez, su madre Lizette Vázquez Vélez y su hermano Luis Miguel Morales Vázquez

---

[4] Como resultado de esta enmienda, que consta parcialmente en manuscrito, la denuncia leyó como sigue: "[e]l referido acusado Wilfredo Hiram Santiago Figueroa, allá en o para el día 7 de enero de 2024 y en Guayanilla Puerto Rico que forma parte de la jurisdicción del Tribunal de Primera Instancia Sala de Ponce, a propósito, con la intención criminal, empleó persecución en contra de la Sra. Linnette Morales Vázquez, con quien convivió, consistente en que se personó a la residencia de la misma y cerró una llave de paso, constituyendo dicho acto un patrón de conducta que le infunde temor". Véase Apéndice del Informe de OAL, pág. 143.

murieron a manos del señor Santiago Figueroa. Más tarde, este se suicidó.[5]

Comprensiblemente, estos eventos repercutieron de manera ostensible e inmediata en la ciudadanía. Enfrentando la creciente presión pública por asignar responsabilidades por este evento, el 25 de enero de 2024 --al día siguiente de los hechos--, el Poder Judicial emitió un comunicado de prensa con expresiones autorizadas por su Jueza Presidenta, Hon. Maite Oronoz Rodríguez, en el que informó haber ordenado el inicio de una investigación exhaustiva sobre los procesos judiciales en este caso. A pesar de que la investigación no había comenzado, adelantó que "[a]unque la denuncia no establecía la reincidencia, la información disponible establece que la persona imputada de delito tenía una convicción previa por violencia doméstica, lo que revelaba factores de riesgo que se debieron tomar en cuenta al establecer medidas como la fianza y la supervisión electrónica". Reveló, además, que Fiscalía no solicitó la revisión de las condiciones impuestas, así como aparentes violaciones previas a la orden de protección que la Policía no canalizó ante el Tribunal.[6]

---

[5] De la investigación de OAT surge que el Ministerio Público no notificó copia de cortesía de su *Moción urgente* al juez Serrano Santiago ni a la Jueza Administradora de la Región de Ponce. La moción fue elevada al Juez al día siguiente.

[6] Véase Comunicado de prensa de 25 de enero de 2024 del Poder Judicial de Puerto Rico, *Expresiones autorizadas de la Jueza Presidenta del Tribunal Supremo*, https://poderjudicial.pr/expresiones-autorizadas-de-la-jueza-presidenta-del-tribunal-supremo-de-puerto-rico/ (última visita, 11 de marzo de 2026).

En esa misma fecha, la OAT encomendó a su Oficina de Asuntos Legales (OAL) a "evaluar exhaustivamente los procesos judiciales" con relación al caso de la señora Morales Vázquez.  Tres días laborables más tarde, la OAL le informó que, como resultado de su investigación preliminar --de la cual no ofreció absolutamente ningún detalle--, recomendó iniciar un proceso disciplinario en contra de la jueza Vélez Carreras, con el revelador objetivo de "auscultar si esta jueza incurrió en alguna acción u omisión que pudiera configurar negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales".[7] **Aunque la OAL no ofreció en su misiva ningún detalle de su llamada investigación preliminar ni señalamientos concretos de impropiedad en la conducta de la jueza Vélez Carreras, ese mismo día, la OAT autorizó el inicio de la investigación.**

Como resultado, el 15 de julio de 2024 --167 días después de iniciada su investigación, en lugar de los 90 días que le concedía la Regla 7(b) de Disciplina Judicial, *infra*--, la OAL presentó su Informe de Investigación.  Al dar cuenta del "amplio debate sobre la intervención de los diversos componentes del sistema de justicia en los casos que involucraron a [la señora Morales Vázquez]", informó su encomienda de "llevar a cabo una investigación exhaustiva de los procesos judiciales conducidos [...] con

---

[7] Véase Carta de 30 de enero de 2024 remitida por la Asesora Legal de OAL, Lcda. Isabel Sánchez del Campo, al director ejecutivo de la OAT, Hon. Sigfrido Steidel Figueroa.

el propósito de indagar en el desempeño oficial de los(las) funcionarios(as) que tuvieron injerencia en este asunto, fijar responsabilidades e identificar posibles soluciones operacionales y administrativas" para agilizar el trámite de casos bajo la Ley 54.[8]  Dentro de ese marco de evaluación, la OAL indicó que investigó a la jueza Vélez Carreras "en lo que compete a la facultad conferida a la OAT para investigar el cumplimiento de los miembros de la judicatura con los deberes éticos que les rigen".[9]

Recoge el Informe de Investigación de la OAL que esta notificó personalmente a la jueza Vélez Carreras sobre el inicio de la pesquisa y le requirió presentar sus comentarios escritos dentro de un término de diez (10) días, los cuales esta presentó el 8 de febrero de 2024.[10] De la relativamente corta exposición de la jueza Vélez Carreras surge que, el 10 de enero de 2024 atendió, entre varios otros casos, la vista preliminar por violación a orden de protección al amparo del Art. 2.8 de la Ley 54, presentada por la señora Morales Vázquez.  Sin embargo, escuchados los testimonios de la víctima y su testigo, entendió que no se configuraba ese delito, pues luego de emitida la orden de protección presuntamente desobedecida, las partes habían convivido.  En su lugar, entendió que existía causa probable para arresto por maltrato bajo el Art. 3.1, en su modalidad de maltrato psicológico.

---

[8] Véase Informe de investigación, pág. 1.
[9] Íd., pág. 2.
[10] Véase Apéndice del Informe de OAL, pág. 5.

Abundó la jueza Vélez Carreras que, en su apreciación, aunque una determinación de causa bajo el Art. 2.8 de la Ley 54 conllevaba la imposición automática de supervisión electrónica, el Art. 3.1 no la requería. Por lo tanto, en el ejercicio de su discreción, no impuso medidas de seguridad al imputado más allá de una fianza. **Aclaró, sin embargo, que tomó esta medida luego de solicitar en más de una ocasión al Ministerio Público si había algo más que debía conocer antes de tomar su determinación. Añadió que la orden de protección como tal no fue presentada en evidencia, ni se pasó prueba sobre incidentes de violencia o amenazas de daño corporal.**

En cuanto al Informe de PSAJ, la jueza Vélez Carreras sostuvo que lo examinó antes de emitir su dictamen, pero que le parecía que tenía un contenido distinto al que la OAL le acompañó con su requerimiento de comentarios porque, "a su mejor recuerdo", el que examinó durante la vista no contenía la frase "cárcel concurrente", ni que el Sistema de búsqueda de antecedentes penales arrojara la sentencia cumplida por los Arts. 122.2 y 231 del Código Penal y el Art. 3.1 de la Ley 54.

La jueza Vélez Carreras finalizó señalando que es difícil tarea tomar decisiones y ejercer discreción sin ánimo prevenido y libre de prejuicios o parcialidad. Admitió que, dentro de su discreción judicial, otro juez o jueza pudo haber tomado una determinación distinta, pero eso no hace su intervención antiética. Reconoció no ser

perfecta ni infalible, pero sostuvo que "no pueden juzgarse nuestras determinaciones a base de eventos o sucesos posteriores a nuestra intervención, por más trágicos que sean". En su lugar, propone que se exija a los jueces "[actuar] dentro del marco de la discreción judicial que otorga la ley haciendo un esfuerzo de llevar a cabo nuestra función de forma honesta, sin ánimo prevenido, prejuicio o parcialidad".[11]

No surge del expediente que la OAL hubiese intentado dar seguimiento a los comentarios escritos que suministró la jueza Vélez Carreras mediante requerimientos adicionales o una entrevista en persona.

Recibidos los comentarios de la jueza Vélez Carreras, la OAL entrevistó a la Hon. Lissette Toro Vélez, Jueza Administradora de la Región de Ponce del TPI.[12] Surge de la transcripción de su entrevista que a raíz del incidente realizó su propia investigación, levantó toda la información que surgía de expedientes públicos en cuanto a la orden de protección, las vistas celebradas y condenas anteriores del imputado, y, el 25 de enero de 2024, entrevistó a la jueza Vélez Carreras a pedido de esta.

La jueza Toro Vélez declaró que escuchó la grabación de la vista con la jueza Vélez Carreras, y que esta le explicó que, aunque la denuncia original era bajo el Art. 2.8 de la Ley 54 por violación a una orden de protección, la prueba que ella escuchó no demostraba la violación

---

[11] Íd.
[12] Íd., págs. 151-157.

porque las partes convivieron luego de emitida la orden. La jueza Vélez Carreras manifestó entonces a la jueza Toro Vélez que la fiscal le solicitó considerar una determinación de causa por maltrato psicológico bajo el Art. 3.1, y así lo hizo. A renglón seguido, le aseveró que bajo este artículo la supervisión electrónica es discrecional.

Es el recuerdo de la jueza Toro Vélez que, al mostrarle el Informe de PSAJ, la jueza Vélez Carreras adujo que contenía recomendaciones bajo el Art. 2.8 y ella hizo una determinación bajo el Art. 3.1, **aunque reconoció que si el imputado bajo el Art. 3.1 tenía condenas previas, conllevaba supervisión electrónica**. Esto llevó a la jueza Toro Vélez a inferir que la jueza Vélez Carreras pudo haber leído el Informe de PSAJ, pero que omitió el asunto de las condenas previas, esto es, se concentró en la recomendación.

**No obstante, la jueza Toro Vélez fue enfática en que, a su juicio, la jueza Vélez Carreras no obvió el derecho intencionalmente, sino que hubo una omisión, y caracterizó como "inadvertencia" lo sucedido.** En cuanto al papel del Ministerio Público, sostuvo que la fiscal a cargo del caso **no pidió reconsideración ni alertó a la Jueza de que en este caso la supervisión electrónica era obligatoria, sino que meramente "se allanó" a la fianza.**

El expediente refleja que, como parte de su investigación, la OAL obtuvo información de que el

Ministerio Público y la Intercesora Legal conocían los antecedentes penales del señor Santiago Figueroa.[13]  A su vez, el agente investigador Serrano declaró al ser entrevistado por la OAL que le consta que la fiscal Aulet Morales conocía el expediente del imputado, y que si lo hubiesen llamado a testificar hubiese declarado sobre su historial delictivo.  Indicó, además, que no vio que la jueza Vélez Carreras hubiese leído el Informe de PSAJ, pero que esta sí preguntó a la fiscal Aulet Morales si debía traer algo más a su atención.  Por su parte, el Administrador de PSAJ, Alex Lizazoaín Brebán, relató que **a pesar de que PSAJ elabora el informe para poner al juez o a la jueza en conocimiento de a quién tienen ante sí, a veces se determina causa y se establece una fianza sin medidas adicionales, aunque la ley las requiera.** Declaró que PSAJ se enteró del cambio de delito, del Art. 2.8 de la Ley 54 al Art. 3.1, pero no hizo ninguna gestión para notificar que el imputado tenía antecedentes penales.

Surge además del expediente que la denuncia presentada por violación a la orden de protección indicaba un "Pre-Intervention Number" (PRIN) en la parte superior derecha, el cual es indicativo de que el imputado ha sido intervenido anteriormente por la Policía, aunque ello no implica que hubo una condena previa, sino meramente una intervención.

---

[13] Véase Apéndice del Informe, págs. 358, 385.

A pesar de que la directriz de la OAT fue llevar a cabo una investigación exhaustiva, y así la cataloga la OAL, los tres fiscales a cargo de este caso en sus diferentes etapas, Gariell Rosario Guzmán, Alexandra Aulet Morales y Ruth Myriam Pérez Pérez, declinaron participar.

En su informe, la OAL reconoció que los fiscales son quienes ponen a los jueces y juezas en posición de tomar decisiones de manera informada, "algo que aquí evidentemente no ocurrió".[14] Además, **señaló que los jueces ocasionalmente prescinden de los informes de PSAJ, aun cuando deben considerarlos por disposición de ley**, por lo que "si no se traen ante su consideración por parte del PSAJ, pasarían inadvertidas, como cuando procede imponer el grillete electrónico de manera obligatoria".[15]

Aun así, la OAL concluyó que la jueza Vélez Carreras "se apartó de las obligaciones éticas que deben regir sus ejecutorias, en la medida en que falló en actuar con la competencia, responsabilidad, diligencia y cuidado exigido en la aplicación y cumplimiento del derecho vigente en el contexto de un caso de violencia doméstica".[16] Según la OAL, sus hallazgos evidencian un "craso desconocimiento o inobservancia de las disposiciones legales aplicables en materia de fianza y de las condiciones a imponer para salvaguardar la seguridad de las víctimas en casos que se ventilan bajo la Ley 54, no empece a la advertencia que el

---

[14] Véase, Informe de Investigación, pág. 77.
[15] Íd., pág. 79.
[16] Íd., pág. 81.

PSAJ le efectuó a esos fines".[17]   Es su postura que la negligencia desplegada por la querellada justifica la imposición de sanciones disciplinarias aun tratándose de un error de derecho, pues "el incumplimiento legal aludido sobrepasa la frontera de un mero error de hecho o de derecho y configura, en vez, una conducta impropia que transgrede los deberes éticos que rigen la conducta de los miembros de la Judicatura".[18]

Bajo estas premisas, la OAL planteó que, según el estado de derecho vigente al momento de los hechos, los tribunales venían obligados a imponer supervisión electrónica en los casos de incumplimiento de los Artículos 2.8, 3.2 (excepto el inciso (d)), 3.4 y 3.5 de la Ley 54, o en caso de reincidencia bajo la Ley 54, independientemente del artículo originalmente incumplido. Es su postura que, por tratarse de una disposición que no le confería discreción, la jueza Vélez Carreras incurrió en incumplimiento y menosprecio al estado de derecho vigente, lo que --según la OAL-- resulta contrario a los deberes dispuestos en los Cánones 1, 3 y 8 de Ética Judicial.

Además, la OAL estima que lo ocurrido evidencia que la jueza Vélez Carreras tampoco ejerció la diligencia requerida en virtud del Canon 17 al emitir su determinación con respecto a las medidas de seguridad impuestas, pues no examinó ni consideró el Informe de PSAJ, el cual le

_____

[17] Íd.
[18] Íd., pág. 86.

advertía de la obligatoriedad de imponer supervisión electrónica.

El 16 de julio de 2024, la licenciada Lourdes Velázquez Cajigas, presidenta de la Comisión de Disciplina Judicial (Comisión), emitió una *Determinación Administrativa* en la cual nombró a la licenciada Nélida Jiménez Velázquez para que examinara el informe sometido por la OAL y determinara si existía causa probable para presentar una querella ética contra la jueza Vélez Carreras. Una semana después, el 23 de julio de 2024, la licenciada Jiménez Velázquez suscribió una *Resolución* acogiendo el Informe de Investigación presentado por la OAL en su totalidad. En consecuencia, determinó que existía causa probable para iniciar un proceso disciplinario contra la jueza Vélez Carreras por violaciones al Canon 1, sobre fidelidad al cargo judicial y obligación de defender y obedecer las leyes; el Canon 3, sobre la prioridad que imponen los deberes judiciales sobre cualquier otra actividad; el Canon 8, sobre diligencia y competencia en el descargo de sus funciones judiciales; y el Canon 17, sobre diligencia en el manejo de los casos ante su consideración.

Así las cosas, el 15 de agosto de 2024, la OAT presentó la correspondiente *Querella* contra la jueza Vélez Carreras, en la cual imputó los siguientes cargos:

PRIMER CARGO:
La jueza Vélez Carreras incurrió en negligencia crasa y, por ende, descuidó los deberes y funciones de su cargo en el contexto de un caso

de violencia doméstica, cuando incumplió con la obligación legal que le exigía imponer -sin margen de discreción alguna- la medida de supervisión electrónica al señor Santiago como condición a la libertad bajo fianza que le concedió en la vista de causa probable para arresto (Regla 6) celebrada el 10 de enero de 2024. Con ello demostró un claro desconocimiento y menosprecio por el estado de derecho vigente que así lo requería en casos de reincidencia por delitos bajo la Ley 54. De esta forma, la Querellada se condujo en contravención a los Cánones 1, 3 y 8 de Ética Judicial.

SEGUNDO CARGO:

La jueza Vélez Carreras desplegó falta de diligencia y cuidado, y con ello demostró falta de competencia en el desempeño de los deberes y las funciones de su cargo, al no examinar o considerar, como era debido, el contenido del *Informe Confidencial* (*Informe de Evaluación y Recomendaciones*) que generó el PSAJ para la vista de Regla 6 que presidió en el caso del señor Santiago. De dicho Informe se desprendía (sic) claramente los antecedentes penales y el historial por delitos de violencia doméstica del imputado, así como el carácter mandatorio de la supervisión electrónica que ameritaba imponer bajo esas circunstancias. De este modo, la Querellada infringió los Cánones 8 y 17 de Ética Judicial.

A base de estos cargos, la OAT solicitó a la Comisión que declarara con lugar la querella y nos recomendara la imposición de sanciones contra la querellada.

El 19 de septiembre de 2024, la jueza Vélez Carreras presentó su *Contestación a Querella*. Tras expresar que "[n]o puede hacerse abstracción de la tragedia humana que entraña el caso de marras", en esencia reclama que los dos cargos que se le imputan "se refieren rigurosamente a actuaciones judiciales propias de ser recurridas o revisadas en el curso ordinario del proceso judicial correspondiente", por tratarse de determinaciones erradas en derecho. Señala que esta querella no se ubica dentro

de los lineamientos deontológicos y sustantivos que este Tribunal ha establecido para que proceda una acción disciplinaria. Así, sostiene que esta querella "ha sido encuadrada más bien en el contexto de la tragedia humana que entraña el caso y sacudió al país", y que si bien el asesinato de la señora Morales Vázquez, su madre y su hermano son "el acto más vil y repulsivo a la moral y al orden jurídico", las actuaciones de la Jueza durante la vista de Regla 6 no pueden estimarse causal de esta tragedia.

En términos sustantivos, la jueza Vélez Carreras apuntaló que no existe controversia en cuanto a los hechos esenciales de este caso, esto es: que tras reclasificar el delito imputado y determinar causa para arresto bajo el Art. 3.1 de la Ley 54, ordenó una fianza monetaria pero no impuso supervisión electrónica como requería la ley. No obstante, aduce que la reincidencia del imputado no se alegó en la denuncia, no se desfiló durante la prueba testifical, ni se argumentó durante la vista. Partiendo de estas premisas, arguye que sus actuaciones no reflejan motivaciones indebidas o personales. En consecuencia, aun estando ante un error de derecho, su actuación "no proyecta, trasluce y menos aún comporta la arbitrariedad y subversión intencional de procedimientos legales en claro menosprecio del Derecho que justifican la imposición de disciplina profesional".[19]

---

[19] Véase Contestación a Querella, pág. 11.

Finalmente, la jueza Vélez Carreras hizo hincapié en que este proceso ya ha servido su propósito aleccionador, pues le ha edificado como una mejor profesional y le ha sensibilizado aún más en el ejercicio de su función judicial. En mérito de lo anterior, solicitó el archivo de la querella, previa censura y apercibimiento de rigor, en función del principio de proporcionalidad que rige estos procesos disciplinarios.

Luego de varios incidentes procesales que no es necesario pormenorizar, el 27 de noviembre de 2024, la OAT y la querellada presentaron su *Informe sobre conferencia entre abogados y abogadas*. Asimismo, el 22 de enero de 2025, presentaron sus estipulaciones de hechos e informaron su acuerdo de someter el caso para adjudicación a base de los hechos y prueba estipulada, sin necesidad de celebrar vista. Finalmente, solicitaron término para presentar sendos memorandos de hechos y de derecho.

Así las cosas, el 10 de marzo de 2025, la jueza Vélez Carreras presentó su *Memorando de hechos y de derecho*. A grandes rasgos, **reiteró su posición de que su conducta no amerita acción disciplinaria por no estar presente el elemento fundamental de intención y, además, por no existir prueba clara, robusta y convincente que lo demuestre.** Por su parte, la OAT presentó su *Memorando de derecho de la Oficina de Administración de los Tribunales*, en el cual repitió sus argumentos a favor de la imposición de sanciones.

Sometida la controversia, el 21 de mayo de 2025, la Comisión emitió su *Informe de la Comisión de Disciplina Judicial* en el cual concluyó que la prueba estipulada demostró de forma clara, robusta y convincente que, con sus omisiones, la jueza Vélez Carreras se apartó de las obligaciones legales preceptuadas en los Cánones 1, 3, 8 y 17. En esencia, concluyó que, al momento de los hechos, la Ley 99-2009, *infra*, establecía la obligatoriedad de imponer la medida de supervisión electrónica en casos de reincidencia, lo cual la querellada omitió, demostrando su incumplimiento con una norma legal que venía obligada a imponer. Además, no revisó el Informe de PSAJ del cual surgían los antecedentes penales que activaban la mencionada medida de seguridad de manera obligatoria, "[soslayando] factores trascendentales que por disposición legal estaba obligada a tomar en consideración" al imponer la fianza al señor Santiago Figueroa.

A base de estas conclusiones, la Comisión adujo que la querellada "demostró, más allá de un error de derecho, un desconocimiento total del estado de derecho vigente y desplegó una negligencia crasa e inexcusable, contraria a los postulados de los Cánones 1, 3, 8 y 17 de Ética Judicial". En consecuencia, nos recomienda como sanción la suspensión de la jueza Vélez Carreras por un término de entre tres y seis meses.[20] **En ninguna parte de su informe**

---

[20] El Comisionado Asociado Reinaldo O. Catinchi Padilla hizo constar que recomendaría una censura enérgica acompañada de una amonestación, y que la Jueza Vélez Carreras reciba readiestramiento en las áreas

**nos presentó prueba de que la aplicación errónea del derecho por la jueza Vélez Carreras fue intencional o que hubiese intentado favorecer impropiamente a alguna de las partes.**

Repasados detenidamente los hechos de este caso, debemos considerar las normas deontológicas aplicables.

## II

### A.

Como se sabe, el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que estos sirvan de ejemplo y fomenten el respeto y la confianza del pueblo en el Sistema Judicial. *In re Cancio González*, 190 DPR 290, 297 (2014). Véase, además, *In re Claverol Siaca*, 175 DPR 177, 188 (2009). Este deber parte del principio de que la legitimidad de las instituciones de justicia se funda no sólo en la autoridad jurídica que se les ha dado mediante los mecanismos formales del Estado, sino también en la confianza que la ciudadanía tiene en las personas que ejercen cargos públicos. *In re Ramos Mercado*, 170 DPR 363, 393 (2007). Cualquier conducta que pueda lacerar la credibilidad que existe sobre el Poder Judicial marchita y empaña la investidura de aquellos y aquellas que honran

---

esenciales de la Ley 54. **Por su parte, el Comisionado Asociado Jorge L. Toledo Reyna emitió un Voto Disidente en parte y Concurrente en parte, por entender que se demostró mediante prueba clara, robusta y convincente la violación al Canon 8, pero no de los Cánones 1, 3 y 17.**

día a día los postulados de la independencia judicial. *In re Acevedo Hernández*, 194 DPR 344, 361 (2015).

Ante ello, el Art. V, Sec. 11 de la Constitución de Puerto Rico, LPRA, Tomo I, faculta a este Tribunal para atender los procedimientos disciplinarios relacionados con los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones, mediante los mecanismos dispuestos por ley. *In re Candelaria Rosa*, 197 DPR 445 (2017); *In re Sierra Enríquez*, 185 DPR 830, 850 (2012). Cónsono con este mandato, la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como la Ley de la Judicatura, 4 LPRA sec. 24 *et seq.*, impuso a este Tribunal la obligación de adoptar e implementar cánones de ética judicial que rijan la conducta de los jueces y juezas de Puerto Rico, que a la vez "[reflejen] la expectativa de la sociedad respecto a la Judicatura, mediante el reconocimiento de la relación fiduciaria que debe existir entre el juez y la comunidad, y establecer programas educativos compulsorios para los miembros de la Judicatura". Art. 2.003 de la Ley de la Judicatura, 4 LPRA sec. 24d. Véase, además, *Exposición de motivos*.

Acorde con esta encomienda, el 5 de abril de 2005, aprobamos los Cánones de Ética Judicial de Puerto Rico. *In re Aprobación Cánones Ética 2005*, 164 DPR 403 (2005). Según su Preámbulo, "[e]stos cánones son normas mínimas de conducta que deben cumplir celosamente quienes tienen la encomienda de impartir justicia. Están diseñados para

guiar a las juezas y a los jueces en el desempeño de sus cargos judiciales y sirven de estructura para la reglamentación de la conducta judicial". Íd., pág. 409. **A su vez, "[p]retenden, de manera prioritaria, fortalecer la independencia judicial como pilar de la sociedad democrática".** Íd. (Énfasis suplido). Están encaminados a promover la confianza de la ciudadanía en su sistema de justicia, al requerir de las juezas y los jueces la más estricta adhesión a principios éticos en el manejo de sus asuntos personales, financieros y extrajudiciales. Íd.

Estos Cánones buscan garantizar el eficiente desempeño de los jueces y las juezas al estimularlos a ser laboriosos, imparciales, prudentes, serenos, sensibles, estudiosos del Derecho y cuidadosos en la interpretación de la ley. Íd. Para honrar la independencia e integridad que requiere el cargo, los jueces y las juezas deben mostrar entereza, convicción e imparcialidad en su comportamiento. *In re Velázquez Hernández*, 162 DPR 316, 324 (2004).

### B.

El incumplimiento con lo dispuesto en los Cánones de Ética Judicial puede acarrear la imposición de severas sanciones disciplinarias. *In re Pérez Guerrero*, 201 DPR 345 (2019); *In re Espino Valcárcel*, 199 DPR 761 (2018). En ese sentido, el Art. 6.001 de la Ley de la Judicatura, 4 LPRA sec. 25i, define a grandes rasgos los tipos de

conducta que podrían acarrear tales medidas. En lo pertinente, este artículo dispone lo siguiente:

Artículo 6.001.-Conductas que conllevan medidas disciplinarias

Estará sujeto a la imposición de medidas disciplinarias todo juez que:

(1) Incurra en violación a la ley, a los Cánones de Ética Judicial, a los Cánones de Ética Profesional o a la reglamentación administrativa aplicable, cuando medie una determinación final por un foro competente.

(2) Manifieste negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales.

Surgen del Art. 6.001 dos escenarios bajo los cuales un juez o una jueza se expone a acciones disciplinarias: (1) por violación de ley, de los Cánones de Ética Judicial o de la reglamentación administrativa aplicable, y (2) cuando su desempeño denote negligencia crasa, inhabilidad o incompetencia. Entre el abanico de medidas disciplinarias que podrían ser impuestas están: la destitución del cargo; suspensión de empleo y sueldo; limitar el ejercicio de la abogacía; una censura; una amonestación; o cualquier otra medida remediativa que consideremos adecuada. Art. 6.002 de la Ley de la Judicatura, *supra*.

Es indudable la facultad delegada para investigar la conducta de jueces y juezas. Sin embargo, esta no es irrestricta: **es norma ampliamente reiterada que un error de hecho o de derecho cometido por un juez en el desempeño de sus funciones es causa inapropiada para iniciar un proceso para disciplinarlo.** *In re Cancio González*, *supra*,

pág. 312; *In re Sierra Enríquez*, *supra*, pág. 852; *In re Pagani Padró*, 181 DPR 517 (2011); *In re Vicenty Nazario I*, 169 DPR 194, 223 (2006); *In re Scherrer Caillet-Bois*, 162 DPR 842, 864 (2004); *In re Velázquez Hernández*, *supra*, pág. 332; *In re Hon. Díaz García, T.P.I.*, 158 DPR 549, 557 (2003); *In re Quesada*, 82 DPR 65, 74 (1961).[21] Véase, además, S. Steidel Figueroa, *op. cit.*, pág. 141. **Es igualmente normativo que, bajo nuestro ordenamiento deontológico, un error de juicio no equivale a negligencia ni menosprecio absoluto de la ley**. *In re Hon. Díaz García, T.P.I.*, *supra*, pág. 557, citando a *In re Quesada*, *supra*. Ello pues, al cometerse tales errores, la parte adversamente afectada tiene a su haber el procedimiento ordinario de revisión judicial. Íd, págs. 557-558.

Cónsono con estos principios, la Regla 3 de Disciplina Judicial, 4 LPRA Ap. XV-B, dispone el alcance de nuestra función disciplinaria como sigue:

> *Regla 3. Alcance de estas reglas*
>
> Estas reglas regirán el procedimiento disciplinario contra jueces o juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones, por:
>
> a) Violación a la ley, a los Cánones de Ética Judicial, al Código de Ética Profesional, a órdenes y normas administrativas aplicables, negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales, o
>
> b) condición de salud física o mental, ya sea temporera o permanente, que menoscabe el desempeño de sus funciones judiciales.
>
> **No obstante, se dispone, sin que la siguiente enumeración sea taxativa, que no será**

---

[21] Véanse, además, *In re Emda R. 3 Disciplina Judicial*, 182 DPR 533, 536 (2011); Comentarios al Canon 9 de Ética Judicial.

**investigada aquella queja o solicitud de separación que:**

(a) Trate de hechos tan remotos que impida realizar una investigación efectiva o que coloque al juez o jueza en una situación de indefensión;

**(b) pretenda intervenir impropiamente con determinaciones judiciales. Ello no impedirá que proceda una investigación en aquellos casos en los que exista una conducta que denote un posible factor exógeno indebido de conducta antiética en la determinación judicial;**

(c) pretenda utilizar indebidamente el procedimiento disciplinario o de separación para lograr la inhibición de un juez o una jueza en un caso en particular o cualquier ventaja en un caso o procedimiento ante su consideración;

(d) sea frívola de su faz.

La Oficina de Asuntos Legales podrá investigar información confidencial o anónima que pueda dar lugar a la presentación de una queja. (Énfasis suplido).

Como se puede apreciar, el primer inciso de esta regla recoge fielmente lo dispuesto en el Art. 6.001 de la Ley de la Judicatura en cuanto a nuestra facultad para atender quejas fundadas, entre otras causas, en negligencia crasa o incompetencia de un juez o de una jueza en el desempeño de sus funciones. **Sin embargo, la regla prohíbe expresamente investigar quejas instadas para, entre otros objetivos, intervenir con determinaciones judiciales.** Como única excepción, podría proceder una investigación "en aquellos casos en los que exista una conducta que denote un posible factor exógeno indebido de conducta antiética en la determinación judicial". Íd. En otras palabras, una queja que versa sobre un error de derecho solo puede investigarse si el error como tal surge de una acción antiética sancionable.

Así las cosas, para determinar si un error de hecho o de derecho constituye conducta antiética, debe probarse que constituyó un abuso intencional de la discreción judicial o que su magnitud reflejó conducta impropia o favoritismo hacia alguna parte. *In re Hon. Díaz García, T.P.I.*, supra, págs. 558-559; *In re Jackson Sanabria*, 97 DPR 1 (1969). De no serlo, no procede invocar la jurisdicción disciplinaria para pasar juicio sobre un dictamen judicial, en sustitución de los mecanismos de revisión que nuestro ordenamiento provee. *In re Hon. Benero García*, 202 DPR 318, 383 (2019); *In re Sierra Enríquez*, supra, pág. 852.

**Más aun, nuestro ordenamiento ético disciplinario requiere la existencia de prueba clara, robusta y convincente de que hubo violaciones éticas para imponer sanciones disciplinarias.** *In re Hon. Benero García*, supra, pág. 376; *In re Candelaria Rosa*, supra, pág. 459; *In re Quiñones Artau*, 193 DPR 356, 386 (2015). Este estándar probatorio es más alto y sólido que el de preponderancia de la prueba, pero menos exigente y riguroso que el de prueba más allá de duda razonable. *In re Salas Arana*, 188 DPR 339, 347 (2013), citando a *In re Martínez Almodóvar*, 180 DPR 805, 820 (2011). Como es conocido, prueba clara, robusta y convincente es aquella que produce en el juzgador una convicción duradera de que las contenciones fácticas son altamente probables. *In re Hon. Benero García*, supra¸

pág. 376, citando a *In re Martínez Almodóvar*, *supra*, pág. 820.

En suma, es regla general que los jueces no pueden ser objeto de un procedimiento disciplinario meramente por aplicar o interpretar erróneamente los hechos o el derecho en un caso particular. **Para que proceda tal encauzamiento, el querellante tiene el peso de probar que el juez o la jueza abusó intencionalmente de su discreción judicial o que la magnitud de su error reflejó conducta impropia o favoritismo hacia una de las partes.**

En la evaluación de estos elementos, las determinaciones de hecho que haga un comisionado especial en un procedimiento disciplinario merecen deferencia. *In re Sierra Enríquez*, *supra*, pág. 853. Por tal razón, no las alteraremos a no ser que medie pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba. Íd. **Sin embargo, no estamos atados a las recomendaciones que formule el comisionado.** Íd.; *In re Muñoz Morell*, 182 DPR 738, 748-750 (2011). Cuando las partes someten el caso a base del expediente y sus estipulaciones de hechos, nos encontramos en igual posición que la Comisión para evaluar los hechos. Véase, *In re Candelaria Rosa*, *supra*, pág. 460. No venimos obligados a ratificar el informe preparado por la Comisión en torno a una querella disciplinaria. Queda a nuestra discreción, conforme a nuestra autoridad en materia disciplinaria, adoptarlo, modificarlo o rechazarlo. *In re Hon. González*

*Rodríguez*, 201 DPR 174, 208 (2018); *In re Candelaria Rosa*, *supra*.

**C.**

Como hemos visto, la OAT imputa a la jueza Vélez Carreras la violación de los Cánones 1, 3, 8 y 17 de Ética Judicial. Estos Cánones versan sobre deberes y atribuciones generales de los miembros de la Judicatura, y en cuanto a su función adjudicativa.

El **Canon 1** de Ética Judicial, 4 LPRA Ap. IV-B, establece que "[l]as juezas y los jueces respetarán la ley, y serán fieles al juramento de su cargo". Está inspirado en la obligación que impone el Juramento de Fidelidad y de Toma de Posesión de Cargo o Empleo, Art. 186 del Código Político de 1902, según enmendado, 3 LPRA sec. 601. Reconoce el deber ineludible de todo juez de respetar y cumplir las leyes en todo momento, así como ser fiel al juramento que prestó al momento de su investidura. *In re Hon. González Rodríguez*, *supra*, 215.

Surge de los comentarios a este canon su objetivo de transmitir claramente que las juezas y los jueces no están por encima de la ley y son los primeros llamados a respetarla y cumplirla. Íd. El razonamiento es que "[m]al podría un juez exigir a otros cumplir con los preceptos legales cuando él se aparta de ellos". *In re Hon. González Rodríguez*, *supra*, pág. 215. En consecuencia, aquellos miembros de la Judicatura que de alguna manera se desvíen del cumplimiento con el ordenamiento legal estarán

expuestos a sanciones disciplinarias. Íd. Por ejemplo, en *In re Acevedo Hernández*, supra, recurrimos a este postulado en el caso de un juez condenado por delitos de conspiración y soborno. También hemos decretado que un juez infringe este canon cuando falta a los deberes de su posición deliberadamente. Véase, *In re Candelaria Rosa*, *supra*.

A su vez, el **Canon 3** de Ética Judicial establece que "[l]os deberes judiciales tendrán prelación sobre cualquier otra actividad". 4 LPRA Ap. IV-B. Surge de los comentarios al canon que se trata de un mandato a priorizar las obligaciones judiciales frente a cualquier otra actividad en que participen los jueces y las juezas, y a mantenerse competentes, sensibles, íntegros y diligentes para así fomentar el debido desempeño de sus funciones judiciales. Íd. De particular importancia a este caso, bajo este canon, los jueces y las juezas deben mantenerse competentes y aumentar sus conocimientos y habilidades **a la luz de los recursos que les ofrezca la Academia Judicial**. Íd.

En el pasado hemos determinado que un juez viola este canon cuando utiliza la inhibición como mecanismo de protesta contra una determinación revocatoria del Tribunal de Apelaciones, pues entendimos que constituyó un acto contra la jerarquía establecida. *In re Candelaria Rosa*, *supra*.

Por su parte, el **Canon 8** de Ética Judicial dispone lo siguiente:

Canon 8. Desempeño en la función adjudicativa.

Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosas y laboriosos, prudentes, serenos e imparciales. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.

La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. 4 LPRA Ap. IV-B.

Este Tribunal expresó en *In re Cruz Aponte*, 159 DPR 170 (2003) que "aunque la figura de los jueces o de las juezas está revestida de autoridad, esta no debe utilizarse indebidamente dentro o fuera del tribunal. Va dirigida a evitar que los jueces o las juezas tomen decisiones ensorbecidos por el poder". Véanse comentarios al Canon 8, *supra.* Véase, además, *In re Hon. Benero García*, *supra*, págs. 378-379. Algunas conductas que podrían constituir violaciones a este canon son: descortesía con respecto a las alegaciones de culpabilidad o a las transacciones entre las partes; interferir con las relaciones entre los abogados y sus clientes; uso impropio del lenguaje; tardanza indebida en la solución de los casos; comunicaciones ex parte; comentarios sobre casos *sub judice*, falta de atención al testimonio de testigos e

intervenciones indebidas a favor de amistades. Véanse comentarios al Canon 8, *supra.*

De pertinencia al caso ante nuestra consideración, este canon obliga a los jueces y juezas a mantenerse al día en cuanto al estudio del derecho, lo cual, según los comentarios a este canon, implica "aprovechar al máximo las oportunidades educativas que se le provean, dedicar tiempo a la lectura de la jurisprudencia y de las nuevas leyes". Íd.

Finalmente, también con relación al desempeño de funciones adjudicativas, el **Canon 17**, 4 LPRA Ap. IV-B, dispone como sigue:

> Canon 17. Diligencia
>
> Las juezas y los jueces serán diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración y procurarán que las partes también lo sean. Examinarán cuidadosamente las solicitudes de suspensión y de prórroga de procedimientos y las aprobarán sólo cuando estén plenamente justificadas.

El claro objetivo de este canon es fomentar que los jueces y juezas eviten toda dilación en el trámite de sus casos, ponderando cuidadosamente las circunstancias al evaluar solicitudes de prórroga o de suspensión de vistas. Véanse, comentarios al Canon 17, Íd.

### D.

Finalmente, por ser un aspecto central en esta controversia, conviene repasar las disposiciones pertinentes de nuestra legislación sobre violencia doméstica.

La Asamblea Legislativa promulgó la Ley 54 en reconocimiento de que "la violencia doméstica es un comportamiento antisocial que constituye un serio problema para la familia puertorriqueña". Véase *Exposición de motivos*, Ley 54, *supra.* El objetivo de esta ley es atender la situación del maltrato de pareja que sufrían miles de personas en Puerto Rico, en su mayoría mujeres, y que no encontraba remedio en los recursos legales existentes. *Pueblo v. Ayala García*, 186 DPR 196, 207 (2012). A esos efectos, establece un conjunto de medidas dirigidas a prevenir y combatir la violencia doméstica mediante la tipificación del delito de maltrato en diversas modalidades y la imposición de las penalidades correspondientes.

Además, esta ley faculta a nuestros tribunales para dictar medidas de protección a las víctimas a través de la expedición de órdenes dirigidas al agresor para que se abstenga de incurrir en determinada conducta con respecto a la víctima. Véase, *Exposición de motivos*, Ley 54, *supra*.

En este contexto, la Ley 54 define "violencia doméstica" como

> el empleo de fuerza física o **violencia psicológica**, intimidación o persecución o violencia económica contra una persona por parte de su cónyuge, excónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o al animal de compañía o mascota de la víctima, de los hijos o del

victimario para causarle grave daño emocional.
Art. 602(v) de la Ley 54, 8 LPRA sec. 602(v).
(Énfasis suplido).

En su modalidad psicológica, la violencia doméstica es a su vez definida como "aquella conducta ejercitada en deshonra, descrédito o menosprecio al valor personal, [...] vigilancia, persecución, aislamiento, [...] o destrucción de objetos apreciados por la persona". Íd., inciso (x).

Como mecanismo de protección a las víctimas de violencia doméstica, el Art. 2.1 de la Ley 54, 8 LPRA sec. 621, permite que una víctima solicite por sí, a través de su representante legal o por un agente del orden público, una orden de protección sin que sea necesaria la radicación previa de una denuncia o acusación. Estas órdenes pueden obtenerse de manera *ex parte*, en aquellos casos en que: (a) se han hecho gestiones de forma diligente para notificar a la parte peticionada, sin éxito; (b) si existe la probabilidad de que la notificación provoque el daño irreparable que se intenta prevenir; o (c) si la parte peticionaria demuestra que existe una probabilidad sustancial de riesgo inmediato de maltrato. Art. 2.5 de la Ley 54, 8 LPRA sec. 625.

De obtenerse una orden de protección *ex parte*, esta tendrá carácter provisional, y el tribunal deberá celebrar vista final dentro de los próximos veinte días de haberse emitido la orden provisional. Brindada a la parte peticionada oportunidad para objetar la orden en su contra, el tribunal podrá dejarla sin efecto o extenderla por el término que estime necesario. Íd.

Como disuasivo contra el incumplimiento de una orden de protección expedida bajo la Ley 54, el Art. 2.8 de la Ley, 8 LPRA sec. 628, establece que cualquier violación a sabiendas será castigada como delito grave de tercer grado, y conllevará, además, la imposición obligatoria de supervisión electrónica en caso de que conceda cualquier tipo de sentencia suspendida.

Establecido el mecanismo para emitir órdenes de protección al amparo de la Ley 54, su Art. 3.1 tipifica el delito de "maltrato" como sigue:

> Toda persona que empleare fuerza física o violencia psicológica o económica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, **o la persona con quien cohabita o haya cohabitado**, o la persona con quien sostuviere o haya sostenido una relación consensual, [...] para causarle daño físico a su persona, [...] a los bienes apreciados por esta, [...] o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior. **No será necesaria la prueba de un patrón de conducta para que se constituya el delito de maltrato.** Art. 3.1 de la Ley 54, 8 LPRA sec. 631. (Énfasis suplido).

Para propósitos de este artículo, el término "cohabitar" significa "sostener una relación consensual de pareja similar a la de los cónyuges en cuanto al aspecto de convivencia". Art. 1.3(e) de la Ley 54, 8 LPRA sec. 602(e). Como surge del texto citado, la Ley 54 protege no solo a víctimas que cohabiten o estén sosteniendo una relación consensual con su agresor o agresora *al momento* de la agresión, sino a aquellas que ya no convivan o hayan terminado tal relación.

Ahora bien, con el propósito de ofrecer protección adicional a las víctimas de violencia doméstica, la Asamblea Legislativa aprobó la Ley Núm. 99 de 18 de septiembre de 2009, conocida como la Ley para crear el Programa de Vigilancia, Protección, y Prevención de Violencia Doméstica, 8 LPRA sec. 668, *et seq.* (Ley 99-2009). El propósito de esta ley fue fomentar la supervisión electrónica como medida de seguridad al conceder fianzas en casos de incumplimiento con la Ley 54, particularmente con relación a la violación a órdenes de protección, maltrato agravado y agresión sexual. Véase, *Exposición de motivos*, Ley 99-2009, *supra*.

Con este fin en mente, el Art. 2 de la Ley 99-2009, 8 LPRA sec. 668, disponía lo siguiente al momento en que se celebró la vista de causa para arresto contra el señor Santiago Figueroa:

> Artículo 2.-El Programa de Servicios con Antelación al Juicio (PSAJ) recomendará a los tribunales, en su informe de evaluación, la imposición de supervisión electrónica como condición adicional y obligatoria al momento de conceder la fianza en el caso en que se le impute a una persona la comisión de un delito de violencia doméstica, cuando se trate específicamente de aquellos casos relacionados con violaciones a órdenes de protección, maltrato agravado, privación de libertad y agresiones sexuales. Por lo tanto, disponiéndose que **los tribunales vendrán obligados a imponer supervisión electrónica en los casos de incumplimiento a los Artículos 2.8, 3.2, excepto el inciso (d), 3.4 y 3.5 de la [Ley 54], o en caso de reincidencia de la anterior citada Ley, irrespectivamente del artículo que se haya incumplido,** con o sin recomendación del PSAJ. (Énfasis suplido).

En atención a esta disposición, al momento de los hechos era obligatoria la imposición de supervisión electrónica a personas que hubiesen violado los Arts. 2.8 (violación de una orden de protección); 3.2 (maltrato agravado); 3.4 (maltrato mediante restricción a la libertad); y 3.5 (agresión sexual conyugal), y, además, en casos de reincidencia en cuanto a la Ley 54, independientemente de cuál artículo el imputado hubiese violado anteriormente.[22]

Por enmienda a este Art. 2, aprobada bajo la Ley Núm. 89 de 8 de agosto de 2023, la imposición de supervisión electrónica pasó a ser discrecional.

Establecidas las normas aplicables, examinemos con mayor rigor qué exactamente demostró la OAT con la prueba que nos ofreció.

## III

Amparada en un informe en el que señala como única prueba de conducta antiética el hecho de no haber ordenado una medida de seguridad en ese momento obligatoria, y sin alegar --mucho menos probar-- un patrón de conducta que permita atribuir falta de capacidad, conocimiento, juicio o diligencia de la jueza Vélez Carreras, la OAT somete la inusual recomendación de suspenderla de empleo y sueldo

---

[22] Con la aprobación de la Ley Núm. 89 de 8 de agosto de 2023 (Ley 89-2023), la imposición de supervisión electrónica quedó sujeta a la discreción del tribunal. Esta enmienda entró en vigor seis meses después de su aprobación, esto es, el 4 de febrero de 2024, a poco más de tres semanas de haberse celebrado la vista de causa para arresto contra el señor Santiago Figueroa.

por cometer un error de derecho. Al hacerlo, empleó una metodología eminentemente consecuencialista. Primero, identificó lo que a su juicio era el fin deseable para la mayoría de los ciudadanos, esto es, "fijar la responsabilidad" de la Jueza. Segundo, determinó que la magnitud del error demuestra, **por sí sola**, que la conducta que lo provocó fue antiética. En el camino, se abstrajo totalmente del estándar bajo el cual veníamos llamados a evaluar su recomendación. Como resultado, emitió una recomendación "buena" para algunos forjadores de opinión pública, pero que subvierte el estándar probatorio hasta hoy aplicable, en fatal conflicto con décadas de ponderado análisis doctrinal.

En pocas ocasiones es posible observar criterios tan perfectamente alineados detrás de tan escaso análisis. Examinada la controversia con el rigor que corresponde, no albergamos duda de que la recomendación de la OAT es errónea. Veamos por qué.

La OAT nos solicita con el primer cargo formulado la imposición de medidas disciplinarias contra la jueza Vélez Carreras por entender que incurrió en negligencia crasa y descuidó los deberes y funciones de su cargo, al no imponer supervisión electrónica al señor Santiago Figueroa bajo circunstancias que hacían obligatoria esta medida. Como segundo cargo, plantea que la Jueza no consideró el Informe de PSAJ, del cual surgía la condena previa que hacía obligatorio imponer esta medida de seguridad. Según la OAT,

la querellada "falló en actuar con la competencia, responsabilidad, diligencia y cuidado exigidos en la aplicación y cumplimiento del derecho vigente en el contexto de un caso de violencia doméstica". Por lo tanto, entiende que sus actuaciones y omisiones constituyen violaciones a los Cánones 1, 3, 8 y 17 de Ética Judicial.

**En otras palabras, nos solicita que sancionemos a la jueza Vélez Carreras por cometer un error de derecho.**

Salta inmediatamente a la vista una falla en la teoría de la OAT que nos debió llevar a rechazar de plano esta acción disciplinaria: **al menos desde 1961, este Tribunal ha dicho que un error de juicio no equivale a negligencia ni menosprecio absoluto de la ley**. Véase *In re Quesada*, *supra*. Es norma clara y reiterada que este tipo de error no es causa apropiada para iniciar un proceso disciplinario, mucho menos para imponer sanciones, y así lo disponen nuestros reglamentos desde hace más de treinta años.[23] La razón para ello es por todos conocida: la conducta de un juez debe honrar la integridad e independencia de su ministerio. *In re Acevedo Hernández*,

---

[23] Véase, *Reglas de Procedimiento para Acciones Disciplinarlas y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico*, 131 DPR 630, 643-644 (1992). Al igual que la Regla 3 de Disciplina Judicial vigente, la Regla 6 de este cuerpo reglamentario disponía que no se investigaría una queja que "pretenda intervenir impropiamente con determinaciones judiciales". El comentario a esta regla explicó este objetivo como sigue:

> En lo que respecta al inciso (b) --determinaciones judiciales-- debemos señalar que **la comisión de un error, de hecho o de derecho, por un juez en el desempeño de sus funciones judiciales no es causa para disciplinarlo (*In re Quesada*, 82 D.P.R. 65 (1961)) ni fuente para una acción civil por daños contra su persona (*Feliciano Rosado v. Matos, Jr.*, 110 D.P.R. 550 (1991))**. (Énfasis suplido).

*supra*.  **La ley y la justicia no deben enfrentar como criterio en contrapeso el temor del juez o de la jueza a enfrentar procesos disciplinarios por un error de hecho o de derecho, cometido en el desempeño de su función judicial**.

Enfrentada a la abundante jurisprudencia que contradice el curso de acción que nos recomiendan, la OAT no reclama abuso intencional de discreción o favoritismo hacia una de las partes por la querellada.  En su lugar, propone, con frugal explicación, la teoría de que el error cometido por la jueza Vélez Carreras es de tal magnitud que necesariamente refleja conducta impropia, pues demuestra, "más allá de un error de derecho, un desconocimiento total del estado de derecho vigente" en cuanto a violencia doméstica.[24]  En palabras de la OAT, "[e]l incumplimiento legal aludido sobrepasa la frontera de un mero error de hecho o de derecho y configura, en vez, una conducta impropia que transgrede los deberes éticos que rigen la conducta de los miembros de la judicatura".[25]

A poco que se examinen los planteamientos de las partes a la luz de nuestros pronunciamientos anteriores en el contexto disciplinario, debió quedar claro que estamos ante una querella que la OAT nunca debió presentar.

De entrada, es justo consignar que en este caso no existe controversia en cuanto al error cometido por la

---

[24] Véase *Informe de la Comisión de Disciplina Judicial*, pág. 36.
[25] Véanse Querella, pág. 45; *Informe sobre conferencia entre abogados y abogadas*, pág. 8.

jueza Vélez Carreras.  Son hechos estipulados que desde el 26 de septiembre de 2023 se expidió una orden de protección contra el señor Santiago Figueroa, con vigencia hasta el 26 de marzo de 2024.  Fue estipulado además que, expedida esta orden, las partes se reconciliaron y volvieron a convivir como pareja hasta el 6 de enero de 2024, fecha en que la víctima terminó la relación.  Asimismo, quedó probado que, el 10 de enero de 2024, la víctima presentó una denuncia bajo el Art. 2.8 de la Ley 54 por violación a la orden de protección vigente, y que la jueza Vélez Carreras encontró causa probable para arresto contra el imputado, pero no bajo el Art. 2.8, sino bajo el Art. 3.1 en su modalidad de maltrato psicológico.  Finalmente, fue estipulado que la querellada solo impuso una fianza al señor Santiago Figueroa como condición para dejarlo en libertad hasta la vista preliminar.

Bajo este cuadro de hechos, en efecto, la determinación de la jueza Vélez Carreras fue errada.  A pesar de que, como esta aseveró durante la vista, la imposición de supervisión electrónica es obligatoria bajo el Art. 2.8 de la Ley 54, pero no bajo el Art. 3.1, a la fecha en que se celebró la vista, el Art. 2 de la Ley 99-2009 exigía esta medida de seguridad en casos de reincidencia con respecto a la Ley 54.  Del expediente surge la condena previa del imputado bajo el Art. 3.1 de esta ley.  En consecuencia, no imponer supervisión electrónica al señor Santiago Figueroa fue un error.

**Tampoco existe controversia en cuanto a que se trató de un error de derecho.** Es innegable que la jueza Vélez Carreras actuó de forma contraria a la norma vigente, y así lo admite cándidamente.

Ante este escenario, nuestro ordenamiento deontológico imponía a la OAT un peso probatorio claro. De acuerdo con la Regla 3 de Disciplina Judicial, venía obligada a identificar el "factor exógeno indebido de conducta antiética" en la determinación de la jueza Vélez Carreras que le permitió investigar esta queja a pesar de ir dirigida a intervenir con una determinación judicial. Es decir, para encauzar esta acción disciplinaria basada en un error de derecho, el error debía ser consecuencia de conducta de por sí impropia de la querellada. De lo contrario, la misma Regla 3 le impedía siquiera presentar una querella. Más aun, debía demostrar esta conducta a través de prueba clara, robusta y convincente.

La OAT fracasó decisivamente en su intento por superar este obstáculo. En cuanto al primer cargo, indicaron que la jueza Vélez Carreras "incurrió en negligencia crasa [...] cuando incumplió con la obligación legal que le exigía imponer [...] la medida de supervisión electrónica". Es decir, imputaron negligencia crasa a la querellada, lo cual, como ha quedado diáfanamente demostrado, nuestro ordenamiento no permite siquiera investigar, por tratarse de un error de derecho.

Por otro lado, apoyaron su segundo cargo en dos hechos esenciales: que la Jueza no se percató del número de preintervención en la parte superior de la denuncia, y que no leyó "con detenimiento y cuidado" el Informe de PSAJ, por lo que no se percató del historial delictivo del imputado que surgía de estos documentos. Esta formulación es claramente insuficiente. Aun si aceptáramos que la jueza Vélez Carreras no examinó estos documentos con suficiente detenimiento, estos hechos no podrían ser considerados aisladamente como prueba de incompetencia, pues debían formar parte de un patrón de conducta que demuestre que no posee la capacidad, conocimiento, juicio o diligencia para descargar consistentemente los deberes de su puesto. Véase, *In re Pagani Padró*, *supra*, pág. 530, citando a *In re Baber*, 847 S.W.2d 800, 803 (Missouri 1993).

La conclusión puede ser solo una: el expediente está totalmente desprovisto del factor exógeno que requería la Regla 3 de Disciplina Judicial para instar esta acción. Por lo tanto, es totalmente improcedente enjuiciar disciplinariamente a la jueza Vélez Carreras bajo estos cargos. Distinto hubiese sido, por ejemplo, si, alertada por el Ministerio Público sobre la peligrosidad del señor Santiago Figueroa, de su historial delictivo y de su condena anterior por un delito de violencia doméstica, la Jueza se hubiese rehusado sin fundamentos a revisar su determinación de no imponer la supervisión electrónica. Bajo ese escenario, su actuación constituiría un abuso

intencional de discreción y, por lo tanto, quedaría sujeta a escrutinio disciplinario.

Ahora bien, la OAT emite su recomendación bajo la premisa de que, a modo de excepción, procede instar procedimientos disciplinarios en casos que envuelvan errores de derecho, si sus consecuencias lo justifican.

No podemos avalar esta pretensión. Ciertamente, en el pasado hemos atendido acciones disciplinarias que envuelven errores de derecho, pero van invariablemente atadas a un factor antiético **exógeno** a la determinación judicial que motiva el error en primer lugar. Por ejemplo, en *In re Quiñones Artau*, *supra*, un juez encontró causa por perjurio contra un agente encubierto que testificó en su sala, luego de que el Ministerio Fiscal le apercibiera de que no contaba con facultad para constituirse en juez instructor para determinar si el agente incurrió en conducta delictiva. En ese caso, el juez celebró vista y tomó su determinación luego de haber sido transferido a otra región judicial, y de que una jueza distinta desestimara la causa. Allí resolvimos que su actuación no fue un mero error de derecho, sino un abuso **intencional** de su poder.

De igual modo, en *In re Liceaga*, 82 DPR 252 (1961), un juez sentenciaba e imponía multas a acusados al momento en que sus casos le eran sometidos para determinación de causa probable, sin haberse presentado una denuncia. A su vez, se apropiaba de las cantidades depositadas en pago de

las multas ilegalmente impuestas. En esa ocasión concluimos que incurrió en **conducta impropia e inmoral** que daba lugar al desaforo bajo los Cánones de Ética para la Judicatura de 1957.

Por otro lado, en *In re Cruz Aponte*, *supra*, una jueza fue separada de su puesto luego de que ordenara el arresto por desacato sumario de una trabajadora social con quien sostuvo un altercado por teléfono, cuando su sala no estaba en sesión, y cuyo origen fue el tono hostil con el que la propia jueza increpó a la trabajadora social. En esa ocasión sancionamos a la jueza por infringir su deber de honestidad, por el uso indebido de su autoridad como jueza, por faltar el respeto a la dignidad del ser humano mediante trato descortés, y por incumplir su obligación de mantener el orden y decoro en el tribunal a través de su propia conducta. En efecto, la jueza invocó la autoridad de su cargo por motivaciones personales.[26]

En principio, las acciones disciplinarias instadas en estos casos implicaban errores de derecho. Sin embargo, fueron las motivaciones indebidas y antiéticas detrás de estas determinaciones judiciales las que justificaron las sanciones impuestas. Así, se cumplió perfectamente la exigencia de investigar casos en los que "exista una conducta que denote un posible factor **exógeno** indebido de

---

[26] El Tribunal resumió su razonamiento como sigue: "[l]a señora Suárez Meléndez tuvo que pasar la noche en la cárcel para mujeres de Vega Alta. La jueza Cruz Aponte, al ordenar el arresto de la querellante sin darle oportunidad alguna para excusarse o explicar lo acontecido, dio la impresión de haber utilizado un privilegio en lugar de haber ejercido su autoridad como miembro de la Judicatura". *In re Cruz Aponte*, *supra*, pág. 189.

conducta antiética en la determinación judicial". En comparación, la OAT no demostró que este elemento estuviese presente en el caso de la jueza Vélez Carreras.

Tampoco podemos avalar el cambio en el estándar probatorio que implicaría permitir que se sometan errores de derecho al escrutinio disciplinario, solo a base de las consecuencias del error. Adoptar el criterio de la OAT tornaría innecesario desfilar prueba adicional, pues la conducta impropia quedaría siempre probada justipreciando las dimensiones del error únicamente. Tal esquema probatorio es radicalmente incompatible con el estándar actual, que requiere demostrar la violación ética mediante prueba clara, robusta y convincente. Ni bajo el estándar más laxo de preponderancia de prueba sería aceptable presumir negligencia únicamente a base del resultado observado. Véase, *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711 (2000).

Por otro lado, es dudoso, por describirlo de algún modo, el análisis mediante el cual la OAT concluyó que la jueza Vélez Carreras "descuidó los deberes y funciones de su cargo" y mostró "claro desconocimiento y menosprecio" por el derecho vigente, pues no tomó en cuenta el papel del Ministerio Público en este caso.

En cuanto a esto, la OAT destacó en su informe un extenso listado de omisiones del Ministerio Público que sin duda contribuyeron a la omisión de imponer supervisión electrónica al señor Santiago Figueroa. Primero, indicó

que la fiscal Aulet Morales no trajo a colación durante la vista el historial delictivo del señor Santiago Figueroa ni su condena previa por maltrato bajo la Ley 54, a pesar de conocerlo. Tampoco preguntó a la víctima ni a su hermano en cuanto a los hechos que propiciaron la orden de protección inicial, no desfiló prueba sobre incidentes de violencia o amenazas de daño corporal, no presentó el testimonio del agente investigador de la Unidad de Violencia Doméstica, quien también conocía los antecedentes penales del imputado, ni emitió juicio sobre el monto de la fianza decretada. En la denuncia como tal tampoco se alegó la reincidencia.

Desfilada la prueba, la fiscal Aulet Morales no alertó a la querellada en cuanto al requisito de supervisión electrónica, no solicitó reconsideración de la determinación de no imponerla, ni inició un proceso de revisión de fianza. Según el informe, esta se allanó a la discreción de la jueza, a pesar de conocer que se debía imponer la supervisión electrónica. Finalmente, el Ministerio Público tardó catorce días en tomar alguna acción para corregir la omisión, al presentar su moción a esos efectos el 24 de enero de 2024 a las 4:55 pm, "al filo del horario regular de trabajo".[27]

En resumen, la OAT reconoce que los fiscales deben llevar el caso y colocar al tribunal en posición de tomar decisiones informadas, traer ante su consideración

_____

[27] Véase *Informe de Investigación*, pág. 76.

elementos de peligrosidad, historial delictivo y medidas de seguridad, y solicitar reconsideración o presentar solicitudes de revisión de fianza cuando estimen que no se impusieron medidas de seguridad suficientes e incluso requeridas por ley. Ante este abultado listado de omisiones del Ministerio Público, la OAT señala, correctamente, que "son los fiscales del Departamento de Justicia [...] los que llevan los casos ante los tribunales **y colocan en posición a los jueces y a las juezas a tomar sus determinaciones de manera informada, algo que aquí evidentemente no ocurrió".**[28]

Lo especialmente perturbador es que, luego de reconocer la necesaria y dinámica interacción que debe darse en sala entre los participantes de un procedimiento judicial adversativo, la OAT requiera este inusitado nivel de perfección en el desempeño de un juez o de una jueza. En cualquier caso, el expediente y su propio informe no reflejan el nivel de descuido de sus deberes o menosprecio por el derecho que reclama la OAT. Por el contrario, demuestran que la Jueza conocía el derecho aplicable, y que la medida de supervisión electrónica procedía con carácter obligatorio bajo el Art. 2.8 de la Ley 54, pero no bajo el Art. 3.1. Esta preguntó en al menos dos ocasiones al Ministerio Fiscal si debía tomar algo más en consideración. No surge de la investigación que hubiese cometido este error en los casos que ha atendido en el

---

[28] Íd., pág. 77.

pasado. Simplemente no existe prueba que demuestre que erró aquí por otra razón que la inadvertencia que el Ministerio Público venía llamado a alertar.

Al margen de todo lo anterior, en su precipitada preparación de una respuesta institucional a esta tragedia, la OAT parece no haber contemplado las consecuencias que acarrearía su recomendación. Como vimos, partiendo de la premisa básica de que la jueza Vélez Carreras "incumplió con la obligación legal que exigía imponer --sin margen de discreción alguna-- la medida de seguridad electrónica", la OAT le atribuye el "claro desconocimiento y menosprecio por el estado de derecho vigente" que configuró la conducta impropia objeto de sanción.  Es decir, la llamada conducta antiética imputada a la Jueza fue actuar al margen de su facultad discrecional.

Ante este fundamento, apremia preguntar a qué abriríamos la puerta hoy exactamente si adoptáramos la postura de la OAT: al enjuiciamiento disciplinario de **toda** determinación tomada al margen de la discreción concedida, o solo de aquellas que conlleven una trágica secuela de alto interés público.

Ninguna de estas alternativas cuenta con valor redimible. La fundamentación que ofrece la OAT sugiere que estamos ante el primer escenario, el cual no solo impone sobre nuestros jueces y juezas el imposible deber de ser perfectos, sino que resulta innecesario, por tratarse de determinaciones revisables en derecho.  La segunda es

todavía menos deseable, pues resultaría en el procesamiento selectivo de casos en el cual dos jueces que incurren en exactamente la misma omisión serían enjuiciados o no en función de eventos posteriores a su determinación sobre los cuales no tienen ningún control.[29]   En efecto, dejaríamos que nuestra función disciplinaria sea ejercitada al azar.

Sin importar cuál de estos enfoques escogiésemos, el resultado seguiría siendo el mismo: el encauzamiento de procedimientos disciplinarios contra un juez o una jueza por un error de derecho, lo cual constituye una estocada a la independencia que un juez o una jueza debe defender. Simplemente no podemos estar de acuerdo.  Debemos recordar que, "[c]omo atributo de la función judicial, [la independencia judicial] exige protección de la judicatura frente a presiones de la sociedad, de sus componentes, de los grupos de interés y de las partes en litigio [...], **así como frente al propio Poder Judicial en el que un juez labora**".[30] La descarnada explicación que ofrece la OAT no nos mueve a modificar una postura histórica que esta conoce muy bien.

---

[29] A manera de ejemplo, ¿disciplinaremos jueces o juezas por emitir órdenes de protección recíprocas? ¿Por imponer penas de restricción domiciliaria a personas convictas por homicidio negligente mientras conducían un vehículo de motor en estado de embriaguez? ¿Procedería una sanción en el caso anterior, si la persona convicta comete algún delito mientras cumple su sentencia? En el plano civil, ¿seremos severos cuando no se impongan fianzas de no residente, o solo en aquellos casos en que, en efecto, el demandante abandone su caso y el demandado no pueda recuperar sus pérdidas precisamente ante la falta de una fianza?

[30] S. Steidel Figueroa, *op cit.*, pág. 70.

En suma, tras un minucioso examen de los argumentos de las partes y examinada la prueba en respaldo a las recomendaciones de la OAT, incluyendo las grabaciones de las vistas judiciales pertinentes, no podemos compartir su criterio.  No existe prueba clara, robusta y convincente que establezca que la jueza Vélez Carreras cometió las violaciones éticas imputadas.  Salvo por la manifiesta avidez de OAT por insertarse en el "amplio debate que se ha generado en al País",[31] esta no puso ante nuestra consideración elementos que justificaran el inicio de una acción disciplinaria contra la jueza Vélez Carreras, mucho menos la sanción recomendada.  En consecuencia, rechazamos las recomendaciones de la OAT y decretamos el archivo de los cargos, sin más.

IV

La claridad con la que nuestro ordenamiento deontológico prescribía un resultado tan distinto al propuesto por la OAT nos lleva, no solo a rechazar sus recomendaciones, sino a evaluar con ojo crítico el papel que esta desempeña actualmente en nuestro esquema disciplinario. Específicamente, amerita evaluar si, ante los hechos de este caso, la OAT utilizó sanamente la discreción y los recursos que le conceden las Reglas de Disciplina Judicial para solicitar investigaciones por iniciativa propia y recomendar el curso de acción disciplinaria adecuado.

---

[31] Véase, **primera oración** del Informe de Investigación de la OAL.

Es forzoso concluir que no. En cuanto a esto, los hechos hablan por sí solos. Como cuestión de umbral, las Reglas de Disciplina Judicial no permitían a la OAT comenzar esta investigación contra la jueza Vélez Carreras. La Regla 4(m) de Disciplina Judicial, 4 LPRA Ap. XV-V, R. 4(m), define el término "queja" como "solicitud de investigación contra un juez o una jueza **por conducta incompatible con su función judicial**". (Énfasis suplido). Cualquier persona interesada en que se investigue la conducta de un juez o de una jueza puede presentar una queja ante la OAL o en el lugar dispuesto para ello en cada región judicial. Regla 5(a) de Disciplina Judicial, 4 LPRA Ap. XV-V, R. 5(a). Esto significa que, para iniciar el proceso, el interesado debe imputar al juez o la jueza una conducta específica que sea incompatible con sus funciones; de lo contrario, no estaríamos ante una queja al amparo de las Reglas de Disciplina Judicial.

Así las cosas, **una queja que impute la comisión de un error de hecho o de derecho debe necesariamente indicar el "factor exógeno indebido de conducta antiética en la determinación judicial" que requiere la Regla 3 de Disciplina Judicial,** *supra*. **Esto es así porque, de lo contrario, la regla prohíbe taxativamente que la queja sea investigada.** Esto incluye, por supuesto, aquellas quejas iniciadas a instancias de la Jueza Presidenta, algún Juez

Asociado o Jueza Asociada, o por el Director de la OAT, como permite la Regla 5(c) de Disciplina Judicial, *supra*.[32]

En este caso, la OAT autorizó por escrito la investigación sobre la conducta de la jueza Vélez Carreras **sin identificar este factor exógeno que permitiría iniciarla en primer lugar**. Tampoco lo hizo la OAL cuando solicitó su autorización, en clara violación de la Regla 3 de Disciplina Judicial. No imputaron intencionalidad ni favoritismo en su determinación. En este sentido, las reglas no establecen distinción entre una queja iniciada por un ciudadano particular y una a solicitud de la OAT. La referida regla simplemente no permitía iniciar esta investigación como lo hizo la OAT. Estamos en este caso, por tanto, ante una queja que se queda claramente corta de cumplir las exigencias de un procedimiento disciplinario formal.

Guiada por su decidida búsqueda de un resultado particular, tampoco podemos favorecer el atropellado trámite que siguió la OAT, mediante el cual le tomó apenas tres días laborales y una investigación preliminar que no hizo formar parte del expediente para concluir que procedía la presentación de una queja. Huelga discusión ulterior sobre el resultado que alcanzó.

---

[32] Según la Regla 5(c) de Disciplina Judicial, *supra*, la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, o el Director de la OAT pueden solicitar a iniciativa propia y por escrito una investigación sobre la conducta o capacidad de un juez o una jueza, **y dicha solicitud se considerará como una queja**.

Evaluada la totalidad de las circunstancias, sería realmente insostenible validar las actuaciones ilegítimas de la OAT para imponer una sanción que, aunque tal vez popular para el público en general, sería improcedente en derecho. En aras de aplaudir un resultado que le parece "bueno", la OAT se desentiende por completo de los medios que tuvo que emplear para llegar a él. En términos deontológicos, esta es una estrategia indeseable, y su impacto sobre nuestra judicatura sería tangible. **Todos los días se dan errores humanos en nuestras salas, todos revisables. No ameritan acción disciplinaria, en reconocimiento de que la independencia judicial tiene el fin de garantizar que los derechos de cada cual serán evaluados en un foro libre e imparcial, sin temor a represalias por sus decisiones, donde la ley y la justicia serán los únicos criterios de decisión.** No podemos variar esta norma solo para cumplir promesas que no debimos haber hecho en primer lugar.

Invita también a la reflexión la notable ausencia en nuestro ordenamiento de medidas reparadoras que ayuden a paliar los efectos de querellas inmeritorias como la instada contra la jueza Vélez Carreras. Aun ante el sobreseimiento de los cargos en su contra, la obstinación de la OAT en un caso totalmente desprovisto de fundamentos obliga a repensar si se debe contemplar algún tipo de reparación a favor de un querellado o querellada que se ve obligado a defenderse de una acción de esta naturaleza.

En este caso, el argumento a favor luce convincente. Desde su primera comparecencia, la jueza Vélez Carreras adujo que era imposible prever un desenlace como el aquí observado, e identificó, correctamente, que cometió un error de derecho que no justificaba una acción disciplinaria en su contra. Dejó saber, además, que había atendido múltiples casos de violencia doméstica sin enfrentar eventos como este, que no actuó mediando motivaciones indebidas ni personales, y que de ninguna forma demostró favoritismo hacia alguna de las partes. Sostuvo que el procedimiento había sido aleccionador y la experiencia, difícil de sobrellevar. Como corolario, aseguró que en el futuro habría de ceñir sus funciones "al más estricto celo y rigor profesional y ético".

Tras una investigación que duró casi seis meses y un proceso disciplinario de más de dos años, la OAT debió quedar satisfecha con estas explicaciones. Sin embargo, insistió en presentar cargos y enjuiciar a la jueza Vélez Carreras en ausencia de prueba de un patrón de conducta que denotara negligencia crasa o desconocimiento del derecho. En efecto, movió el aparato administrativo y los considerables recursos del Estado contra la querellada, con el único objetivo de aplacar el reclamo de un público en búsqueda de un resultado particular, pero desinformado sobre su viabilidad. Este curso de acción está totalmente reñido con nuestro ordenamiento disciplinario.

No albergamos duda de que la OAT conocía o debía conocer las deficiencias del caso que aun así optó por llevar, y obligó a la jueza Vélez Carreras a incurrir en gastos legales, ante la imposibilidad de defenderse por sí misma durante el proceso. Más aun, esta quedó sometida a la angustiosa presión de defenderse durante este prolongado proceso mientras atendía las materias asignadas. **El balance más racional y justiciero de la escasa evidencia que obra en el expediente, unido a la forma atropelladora con la que la OAT dirigió estos procesos, sugieren que está madura una discusión que nos dirija a resultados más equitativos.**

Dicho esto, en el pasado se han escuchado voces de alerta sobre el proceder arbitrario y selectivo de la OAT al canalizar sus investigaciones. Hemos leído expresiones de desaprobación en cuanto a la creación de unidades especiales adscritas a la OAT para investigar, evaluar y fiscalizar el desempeño de los integrantes de la judicatura, no porque se objetase su necesidad, sino por su evidente falta de independencia de criterio. Véase, *In re Enmdas. Rs. Disciplina Judicial*, 191 DPR 564 (voto particular de conformidad de la Jueza Asociada señora Pabón Charneco). Más recientemente, una mayoría de este Tribunal expresó sin ambages que "no debemos permitir que, en el afán de buscar soluciones inmediatas, la OAT desvirtúe el proceso ético judicial, convirtiéndolo en un instrumento

para cometer injusticias". Véase, *In re Hon. Benero García*, *supra*.

Es imprescindible no abandonar este enfoque. De lo contrario, tal vez debamos sustituir nuestras Reglas de Disciplina Judicial por mecanismos procesales dignos de Nicolás Aymerich o Bernardo Gui.

Amerita también reflexionar sobre nuestro propio papel en este esquema. En épocas recientes esta institución ha decidido ocupar un rol mucho más activo ante el ojo público, e incluso se declara deseosa de hacerlo.[33] Esa postura es entendible. Las trágicas muertes de la señora Morales Vázquez, su madre y su hermano marcaron a nuestra comunidad, y compartimos la consternación colectiva que causó el cobarde acto que segó sus vidas. Es comprensible también el deseo de, en alguna medida, compensar su pérdida mediante rápida y decisiva identificación de fallas en el proceso, que podamos corregir de inmediato de cara al futuro.

Sin embargo, las circunstancias de este caso invitan a mayor reflexión; a actuar, no a reaccionar. No podemos subvertir normas deontológicas de necesario arraigo en nuestro ordenamiento solo por arribar a un resultado específico. No debemos perder de perspectiva que nuestra función es fundamentalmente interpretativa. En ese contexto se ha señalado, con razón, que los jueces y juezas no establecemos política pública ni somos responsables de

---

[33] Véase Comunicado de prensa de 25 de enero de 2024 del Poder Judicial de Puerto Rico, *supra*.

su ejecución, pues no somos parte de las ramas políticas del gobierno.[34]  Por eso, si hubiere que decidir entre el activismo judicial imperante y la dignidad del silencio, hoy la prudencia, en otras ocasiones el pudor, aconsejan decantarse por la segunda.

V

En mérito de lo expuesto, concluimos que la OAT incumplió crasamente con el peso de probar que la jueza Vélez Carreras infringió los Cánones 1, 3, 8 y 17 de Ética Judicial.  En consecuencia, se desestiman los cargos presentados y se ordena el archivo inmediato de esta querella.

Se dictará Sentencia en conformidad.


                              Raúl A. Candelario López
                                   Juez Asociado

---

[34] Véase, C.E. Ramos González, *Independencia Judicial*, 43 Rev. Jur. UIPR 273 (2009).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Ginny M. Vélez Carreras | AD-2024-0001

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de esta Sentencia, concluimos que la OAT incumplió crasamente con el peso de probar que la jueza Ginny M. Vélez Carreras infringió los Cánones 1, 3, 8 y 17 de Ética Judicial. En consecuencia, se desestiman los cargos presentados y se ordena el archivo inmediato de esta querella.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez y la Jueza Asociada Rivera Pérez concurren con el resultado sin opinión escrita. La Jueza Presidenta señora Oronoz Rodríguez y el Juez Asociado señor Colón Pérez emitieron Opiniones disidentes.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Ginny M. Vélez Carreras      AD-2024-0001

Opinión Disidente emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Disiento de la decisión tomada hoy por una mayoría del Tribunal, la cual erróneamente sostiene que los elementos de "intencionalidad y favoritismo" constituyen la "única llave" a una acción disciplinaria judicial. Este proceder pasa por alto que es norma reiterada que "podemos disciplinar a un juez o una jueza por […] negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales". *In re Sierra Enríquez*, 185 DPR 830, 850 (2012). *Véanse además*, Artículo 6.001 de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003,* según enmendada, Ley Núm. 201-2003, 4 LPRA sec. 25i; Regla 3(a) de las *Reglas de Disciplina Judicial*, 4 LPRA Ap. XV-B.

En el presente caso, no existe controversia en cuanto a que, al momento en que presidió la vista sobre causa probable para arresto en el caso *Pueblo de Puerto Rico v. Wilfredo Santiago Figueroa*, J1VP202400074, en torno a la denuncia presentada contra el Sr. Wilfredo Santiago Figueroa (señor Santiago Figueroa) por violación al Art. 2.8 de la Ley Núm. 54 - 1989, la Hon. Ginny M. Vélez Carreras (jueza Vélez Carreras) tuvo ante sí el *Informe de evaluación y recomendaciones* del Programa de Servicios con Antelación a Juicio (Informe del PSAJ), el cual era de fácil lectura y constaba de una (1) sola página. Se desprende del Informe del PSAJ, el cual la jueza Vélez Carreras debía examinar y considerar por mandato de ley,[1] que, en cuanto al señor Santiago Figueroa, "[e]l Sistema de Búsqueda de Antecedentes Penales, **arroja sentencia de cárcel por violación al [Art.] 122.3, Art. 231 y Art. 3.1 [de la] Ley [Núm.] 54[-1989] con sentencia total y concurrente entre sí de 10 años**". (Negrilla suplida).

Además, el Informe del PSAJ, cuyo contenido la jueza Vélez Carreras estipuló,[2] indica que "[d]e acuerdo a la Ley [Núm.] 99[-2009] el Art. 2.8 de la Ley [Núm.] 54[-1989] **conlleva supervisión electrónica** y pagar la fianza de manera pecuniaria. **Como también cumplió cárcel por delitos previos de [L]ey [Núm.] 54[-1989]** se recomienda se observe estrictamente con el protocolo de distancia de 30 minutos entre las partes, que al

---

[1] Véanse, Reglas 6.1 y 218 de las *Reglas de Procedimiento Criminal*, 34 LPRA Ap. II.
[2] Véase, *Informe de la Comisión de Disciplina Judicial*, pág. 6. ("Durante la vista del 10 de enero de 2024, la jueza Vélez Carreras tuvo ante sí el Informe de Evaluación y Recomendaciones del PSAJ del Sr. Wilfredo Hiram Santiago Figueroa, el cual consta de una página. (Se estipula dicho Informe del PSAJ)".).

momento de la evaluación no ha ofrecido ninguna residencia viable, que cumpla con el mismo". (Negrilla suplida).

De la prueba documental estipulada surge que la jueza Vélez Carreras encontró causa para arresto por el Art. 3.1 de la Ley Núm. 54-1989 en su modalidad de maltrato psicológico, y no por el delito imputado en la denuncia, a saber, el Art. 2.8 de la Ley Núm. 54-1989. Seguidamente, fijó una fianza de $5,000 y **no sujetó al señor Santiago Figueroa a la medida de supervisión electrónica.**[3]

Durante dicha vista, la jueza Vélez Carreras también indicó, en dos (2) ocasiones, que el referido Art. 3.1 no conllevaba imponer la supervisión electrónica, por lo que no la impondría.[4] Ello, a pesar de que, en su momento, el Art. 2 de la Ley Núm. 99-2009 establecía que

> **los tribunales vendrán obligados a imponer supervisión electrónica** en los casos de incumplimiento a los Artículos 2.8, 3.2, excepto el inciso (d), 3.4 y 3.5 de la Ley [Núm.] 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica" **o en caso de <u>reincidencia de la anterior citada Ley</u>, irrespectivamente del artículo que se haya incumplido, con o sin recomendación de [la Oficina de Servicios con Antelación al Juicio]".** (Negrilla y subrayados suplidos).

A la luz de lo anterior, la Comisión de Disciplina Judicial (Comisión) concluyó en su informe que "la jueza Vélez Carreras demostró, más allá de un error de derecho, un desconocimiento total del estado de derecho vigente y desplegó una negligencia crasa e inexcusable".[5] Entre otras cosas, la

---

[3] Íd., pág. 34.
[4] Íd.
[5] Íd., pág. 36.

Comisión destacó, por conducto de su Presidenta, la Lcda. Lourdes V. Velázquez Cajigas, que

> la existencia de convicciones previas por delitos de la misma naturaleza, así como el riesgo de peligrosidad que el señor Santiago Figueroa representaba para la señora Morales Vázquez eran circunstancias de fácil verificación con una lectura del [Informe del PSAJ].

> No obstante, pese a tener el informe ante sí, la jueza Vélez Carreras no lo tomó en consideración, con lo cual se condujo de forma negligente en el cumplimiento de los deberes del cargo y puso de manifiesto su desconocimiento del estado de derecho vigente.[6]

En virtud de ello, la Comisión nos recomendó ejercer nuestra facultad disciplinaria sobre la jueza Vélez Carreras y decretar su suspensión. No veo razón alguna para rechazar esta recomendación, por resultar correcta como cuestión de hecho y de derecho.

A diferencia de lo expuesto por una mayoría del Tribunal, no procede restringir la disciplina judicial exclusivamente a aquellos casos en que "la aplicación errónea del derecho […] [haya sido] intencional o [haya estado dirigida a] […] favorecer impropiamente a alguna de las partes". Tal limitación reduce indebidamente el alcance del ámbito disciplinario y pasa por alto que pueden existir actuaciones que, aun sin "intencionalidad y favoritismo", comprometan seriamente la integridad y el adecuado funcionamiento de la administración de la justicia, como sería que un juez o una jueza "[m]anifieste negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales".[7]

---

[6] Íd., pág. 35.
[7] Véase, Artículo 6.001 de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 25i.

Ciertamente, "[c]omo regla general, el **mero error** de hecho o **de derecho** no puede ser motivo para que se discipline a un juez [o a una jueza]". (Negrilla suplida). *In re Scherrer Caillet-Bois*, 162 DPR 842, 864 (2004). Sin embargo, ello no implica que estemos impedidos de atender aquella conducta judicial que trasciende un **mero** error de derecho por adicionalmente reflejar un comportamiento indebido o impropio.

En esa medida, la Opinión mayoritaria ordena el archivo del proceso disciplinario que nos ocupa y centra su análisis en descartar la existencia de intención o parcialidad en las acciones de la jueza Vélez Carreras. Lo que la mayoría omite con su análisis es que consistentemente hemos resuelto que también se configura una violación ética cuando, aun sin mediar intención, el error cometido, por su magnitud, refleja conducta impropia. *Véase*, *In re Pérez Soto*, 200 DPR 189, 203 (2018) ("se configura una violación ética si se presenta evidencia de que el error cometido constituyó un abuso intencional de la discreción judicial, o un error que por su magnitud refleje conducta impropia o favoritismo hacia un litigante o abogado particular.").[8]

---

[8] La doctrina que a tales efectos hemos sentado se encuentra firmemente arraigada a nivel de los Estados Unidos. *Véase*, Alfini, Shaman, Lubet and Alfini, *Judicial Conduct and Ethics* § 2.02 (2da ed. 1990) ("While the courts have often said that mere legal error does not amount to judicial misconduct, that does not mean that legal error can never constitute misconduct. In fact, egregious legal error, legal error motivated by bad faith, or a continuing pattern of legal error does amount to misconduct subject to discipline".). Para referencia adicional, véase Cynthia Gray, *The Line Between Legal Error and Judicial Misconduct: Balancing Judicial Independence and Accountability*, 32 Hofstra L. Rev. 1245, 1270 (2004) ("'Egregious' legal errors have been identified as a type of error that justifies disciplinary as well as appellate review. 'Egregious' implies something different than bad faith or a pattern of error as those are listed as separate grounds for departing from the mere legal error rule. […] [E]ven a single instance of serious legal error, particularly one involving the denial to individuals of their basic or fundamental rights, may amount to judicial misconduct".).

A diferencia de lo esbozado por la mayoría, aquí no se pretende intervenir con la discreción judicial del juzgador, ni pasar juicio sobre el discernimiento que le compete a la jueza Vélez Carreras en la ejecución de sus facultades como juzgadora. Más bien, lo que corresponde evaluar es si ese error de derecho, a la luz de las circunstancias aquí planteadas, trasciende el ámbito de una equivocación meramente jurídica y, por su naturaleza o magnitud, evidencia una actuación incompatible con los deberes éticos que rigen la función judicial. En ese contexto, el análisis no puede limitarse exclusivamente a la ausencia de intención o parcialidad.

No quiero pensar que, con intención de confundir, la mayoría obvia el estándar ético aplicable, reconocido tanto en Puerto Rico como en otras jurisdicciones estatales, para evaluar la conducta de la jueza Vélez Carreras, pues su discreción judicial no es lo que está en juego. Más bien, nos corresponde hacer un análisis de si hubo, o no, negligencia crasa, inhabilidad o incompetencia profesional en el ejercicio de sus labores, mientras esta ejercía sus facultades. Entiendo, al igual que la Comisión, que lo anterior se probó en la afirmativa de manera clara, robusta y convincente.

Resalto que la misma jueza, en su *Contestación a la querella* ante la Comisión, reconoció su error de no ordenar la supervisión electrónica, e incluso aceptó la imposición de una censura y apercibimiento.[9] Pese a ello, la mayoría se restringe en su resolución del caso y ordena el archivo de la querella

---

[9] Véase, *Contestación a la querella*, págs. 11-12.

ética, sin más, al incorrectamente fijar la "intencionalidad y favoritismo" como requisitos indispensables para el ejercicio de la disciplina judicial.

Al así proceder, la Opinión mayoritaria transforma lo que deben ser situaciones emblemáticas de conducta sancionable en criterios limitantes. Tal interpretación es jurídicamente incorrecta y erosiona el régimen de derecho al conferir a los jueces y a las juezas un trato injustificado que resulta incompatible con el ejercicio de la función pública. La disciplina judicial debe responder no solo a la conducta intencional que un juez o una jueza despliega hacia una parte, sino también a aquellas conductas impropias que, objetivamente consideradas, resulten incompatibles con el cargo.

Por ello, discrepo firmemente de lo resuelto por este Tribunal pues, no solo carece de apoyo legal alguno, sino que, además, impone una restricción artificial que el ordenamiento jurídico no contempla. Reducir el ámbito disciplinario exclusivamente a tales supuestos equivale a excluir, de manera indebida, aquellas otras conductas que representan una desviación grave de los deberes del cargo judicial. La función disciplinaria no se limita a sancionar la desviación intencional; también protege la integridad del sistema de justicia frente a actuaciones que -por su magnitud, descuido extremo o indiferencia hacia normas básicas- comprometen la confianza pública y el funcionamiento adecuado de los tribunales.

Por lo anterior, recalco que, en las presentes circunstancias, se justifica nuestra intervención disciplinaria, según recomendado por la Comisión.[10] No puedo suscribir una postura que minimiza lo aquí ocurrido y lo relega indebidamente a la categoría de asunto trivial. Este proceder no solo desvirtúa la naturaleza de los asuntos aquí planteados, sino que desatiende nuestra obligación de actuar con rigor y seriedad ante conducta que compromete los estándares de diligencia, imparcialidad y profesionalismo exigibles a la judicatura.

Estimo que el Tribunal debió haber acogido la recomendación dispuesta en el informe de la Comisión, del cual surge que la conducta de la jueza Vélez Carreras denota

> negligencia […][al] no haber leído con detenimiento y cuidado el [I]nforme del PSAJ, del cual surgía el hecho de que el señor Santiago Figueroa resultó convicto y cumplió pena de cárcel por el delito de incendio agravado y violación al Art. 3.1 de la Ley [Núm.] 54[-1989]. Ello hacía imperativo que se impusiese la supervisión electrónica por estar claramente dispuesto en la ley.[11]

Como bien advierte la Comisión, "[d]e una lectura detenida, seria y cuidadosa del contenido de la denuncia y del Informe del PSAJ, la jueza Vélez Carreras hubiese podido conocer –en toda su extensión– la magnitud de lo acontecido".[12] Precisamente,

> [a]l actuar con poca o ninguna diligencia en el manejo de este asunto tan delicado, el cual tenía ante su consideración, la jueza Vélez Carreras soslayó factores trascendentales que por disposición legal estaba obligada a tomar en consideración al

---

[10] Para referencia, *véase*, *In re Jud. Qualifications Comm'n Formal Advisory Opinion No. 239*, 300 Ga. 291, 298, 794 S.E.2d 631, 638 (2016) ("legal error amounts to judicial misconduct if a reasonably prudent and competent judge would consider that conduct obviously and seriously wrong in all the circumstances") (citas internas omitidas) (citando a *Matter of Benoit*, 487 A.2d 1158, 1163 (Me. 1985)).

[11] Véase, *Informe de la Comisión de Disciplina Judicial*, pág. 36.

[12] Íd.

momento de emitir su dictamen sobre los términos y [las] condiciones de la fianza impuesta al señor Santiago Figueroa.[13]

Por último, rechazo la sombra que el Tribunal arroja sobre el trabajo serio y riguroso que desempeña la Comisión y el resto del personal administrativo que nos asiste en el ejercicio de nuestra función disciplinaria. Bien pudiéramos discrepar jurídicamente de sus recomendaciones, pero el arrojar sombra sobre su labor es improcedente y peligroso.

Bien sabemos que las Reglas de Disciplina Judicial establecen el proceso y las normas a seguir para tramitar una acción disciplinaria contra un juez o una jueza.[14] Este trámite inicia con la presentación de una solicitud de investigación ante la Oficina de Administración de los Tribunales (OAT), la cual se puede presentar mediante una queja o por petitorio de algún integrante del Pleno de este Tribunal o el Director o la Directora de la OAT.

Luego de llevar a cabo la investigación de rigor, la OAT rendirá un informe al respecto con recomendación. Si el informe expone conducta que amerita acción disciplinaria, se referirá a la Comisión y será evaluado por un Comisionado Asociado o una Comisionada Asociada, a fines de determinar si existe o no causa probable para presentar una querella en contra del juez o de la jueza cuya conducta se revisa. En el caso que se determine causa probable, la Comisión llevará a cabo la celebración de vistas y la presentación de prueba para luego emitir un informe con su recomendación, la cual se adoptará por la mayoría de los y las

---

[13] Íd., pág. 35.
[14] *Véase* Artículo 6.006 de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, supra*, 4 LPRA sec. 25n.

miembros de la Comisión presentes. Importantemente, la Comisión está compuesta en su mayoría por exjueces y exjuezas, nombrados por los integrantes de este Tribunal, quienes nos someten sus recomendaciones en cuanto a las conclusiones de hecho y derecho.

Este arduo y riguroso proceso es así por diseño de este Tribunal, en aras de garantizar el debido proceso de ley que cobija a los jueces y a las juezas implicadas.

La labor de la Comisión es producto del cumplimiento responsable con sus deberes, los cuales ejercen con rigor y estricto apego al derecho. Este compromiso con sus funciones lo demuestra el trámite seguido en la querella de epígrafe, el cual se llevó en estricto cumplimiento con el cuerpo normativo aplicable. En particular, se encontró causa probable el 23 de julio de 2024 mediante determinación de la Comisionada Asociada, la Lcda. Nélida Jiménez Velázquez, y culminó casi un (1) año después en un informe que se rindió el 21 de mayo de 2025, por conducto de su Presidenta. Desmerecer ese esfuerzo para intentar justificar el archivo de la presente querella no solo es injusto, sino que debilita la estructura de apoyo que garantiza la seriedad, credibilidad y eficacia de nuestro sistema disciplinario.

Por todo lo esbozado, me veo obligada a disentir del proceder mayoritario.

                                        Maite D. Oronoz Rodríguez
                                           Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Hon. Ginny M. Vélez          AD-2024-001
Carreras

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Hoy, -- en el contexto de un trágico y lamentable incidente de violencia doméstica --, veníamos obligados y obligadas a ejercer nuestra facultad disciplinaria para suspender a una magistrada que, con su proceder, infringió los Cánones 1, 3, 8 y 17 de Ética Judicial, *infra*. En este caso, la Hon. Ginny M. Vélez Carreras (en adelante, "jueza Vélez Carreras").

**No obstante, una mayoría de este Tribunal, desatendiendo, <u>una vez más</u>, las determinaciones de hecho y las conclusiones de derecho correctamente formuladas por la Oficina de Administración de los Tribunales (en adelante, "OAT") y la Comisión de Disciplina Judicial, -- y articulando una crítica severa e innecesaria al proceder de dichos organismos,**

<u>**sin prueba alguna de ello**</u> --, opta por desestimar en su totalidad los cargos presentados contra la referida magistrada. Lo anterior, por entender que las actuaciones de la jueza Vélez Carreras constituyeron un mero error de derecho. Fallan malamente mis compañeros y compañeras de estrado en su apreciación.

Y es que, un examen, detenido y cuidadoso, del expediente ante nos revela, con meridiana claridad, una falta grave de diligencia, cuidado y competencia por parte de la referida magistrada en la atención de un asunto particularmente sensitivo y regido por mandatos legales claros, en materia de violencia doméstica. Conducta que, como ya mencionamos, una mayoría de este Tribunal hoy premia, basado en teorías, señalamientos y/o conjeturas en contra de la OAT y la Comisión de Disciplina Judicial, poco creíbles, al menos para el juez que suscribe. Por ello, disentimos.

En ese sentido, contrario a lo que sugiere una mayoría de mis compañeros y compañeras de estrado, exigir responsabilidad disciplinaria en escenarios como los que hoy nos ocupa no supone erosionar la independencia judicial o ceder ante presiones externas. Por el contrario, responde a nuestro deber de velar por el cumplimiento de los estándares mínimos que nuestro ordenamiento deontológico le impone a los jueces y las juezas que forman parte del Poder Judicial de Puerto Rico. Nos explicamos.

I.

La jueza Vélez Carreras fue admitida al ejercicio de la abogacía el 17 de agosto de 2010 y al de la notaría el 25 de febrero de 2011. Posteriormente, -- en particular, el 4 de enero de 2021 --, la referida letrada juramentó al cargo de Jueza Municipal, y, desde el 5 de abril de 2021, fue asignada al Tribunal de Primera Instancia de la Región Judicial de Ponce.

Así las cosas, -- y en lo pertinente al proceso disciplinario que nos ocupa --, el 7 de septiembre de 2023 la Sra. Linnette Morales Vázquez (en adelante, "señora Morales Vázquez") acudió a la Sala de Yauco de la mencionada Región Judicial con el fin de solicitar una orden de protección al amparo de la Ley Núm. 54 de 15 de agosto de 1989, también conocida como la *Ley para la prevención e intervención con la violencia doméstica*, 8 LPRA sec. 601 *et seq.* (en adelante, "Ley Núm. 54"), en contra de su expareja, el Sr. Wilfredo H. Santiago Figueroa (en adelante, "señor Santiago Figueroa").

En su solicitud, y en esencia, la señora Morales Vázquez expuso que había mantenido una relación sentimental con el señor Santiago Figueroa y que puso fin a la misma por este último haberse tornado agresivo. Asimismo, relató que, al separarse, el señor Santiago Figueroa comenzó a incurrir en actos que le hicieron temer por su seguridad.

En específico, la señora Morales Vázquez sostuvo que, en las noches, el señor Santiago Figueroa irrumpía en su hogar de manera amenazante, se estacionaba en las afueras y la

recibía con insultos, intimidación y palabras soeces. De igual forma, alegó que este último acudía a su lugar de trabajo a insultarla, que intervino con las cámaras de seguridad de su residencia y que le vandalizó su vehículo de diversas formas.

A raíz de dichos incidentes, la señora Morales Vázquez indicó que, al momento de su solicitud, ella y sus hijos llevaban seis (6) días sin pernoctar en su hogar. En suma, adujo que temía por su seguridad y la de sus hijos, ante incidentes que nunca antes había vivido.

Tras escuchar las alegaciones de la señora Morales Vázquez, el Hon. Carlos Quiñones Capacetti (en adelante, "juez Quiñones Capacetti"), juez que ese día presidio los procedimientos, expidió la orden de protección solicitada de manera *ex parte*. Asimismo, citó a las partes a una vista final a celebrarse el 26 de septiembre de 2023.

Celebrada la vista final del caso en la fecha antes indicada, y luego de escuchar la prueba desfilada, el juez Quiñones Capacetti extendió la orden de protección solicitada. En particular, otorgó la misma por un término de seis (6) meses, a saber, hasta el 26 de marzo de 2024.

Ahora bien, el 10 de enero de 2024, mientras la orden de protección estaba vigente, la señora Morales Vázquez denunció a las autoridades al señor Santiago Figueroa por éste haberse personado a su residencia y perturbado su tranquilidad. Consecuentemente, se presentaron cargos criminales en contra de este último bajo el Art. 2.8 de la Ley Núm. 54, *infra*, el

cual configura el delito de violación a una orden de protección.

**Días más tarde, se llevó a cabo la vista de causa probable para arresto relacionada con los cargos antes mencionados, la cual fue presidida por la aquí querellada, entiéndase, la jueza Vélez Carreras.** De dicha vista surgió que, después de expedida la orden de protección en cuestión, la señora Morales Vázquez y el señor Santiago Figueroa retomaron su relación y volvieron a convivir como pareja en el hogar de ésta. No obstante, el 6 de enero de 2024 la señora Morales Vázquez le pidió a este último que abandonara su residencia.

Asimismo, en la referida vista de causa probable para arresto, la señora Morales Vázquez narró que, en la noche del 7 de enero de 2024, el señor Santiago Figueroa acudió a su domicilio y le cerró la llave de paso del agua. Dicho testimonio fue sustentado por el hermano de la señora Morales Vázquez, el Sr. Luis M. Morales Vázquez.

**Así pues, evaluada la prueba presentada ante sí, la jueza Vélez Carreras determinó causa probable para arresto en contra del señor Santiago Figueroa bajo el Art. 3.1 de la Ley Núm. 54, *infra*. Es decir, la referida magistrada no encontró causa por el delito originalmente imputado, -- entiéndase, violación a una orden de protección --, sino por el delito de maltrato psicológico tipificado en la Ley Núm. 54, *supra*.**

**Acto seguido, la jueza Vélez Carreras fijó una fianza de $5,000.00 y entendió que no procedía la imposición de la medida**

**de supervisión electrónica.**[1] Finalmente, pautó la celebración de la vista preliminar para el 24 de enero de 2024.

**Cabe destacar que, en la mencionada vista de causa para arresto, la referida magistrada tuvo ante sí el *Informe de evaluación y recomendaciones* del Programa de Servicios con Antelación al Juicio (en adelante, "PSAJ")**[2] **referente al señor Santiago Figueroa. De dicho informe se desprendía que este último era reincidente, pues había cumplido con una sentencia de cárcel de diez (10) años por transgresión al Art. 3.1 de la Ley Núm. 54, *infra*, entre otras disposiciones.**

Posteriormente, y según dispuesto, el 24 de enero de 2024 se celebró la vista preliminar antes señalada, la cual fue presidida por el Hon. Rubén A. Serrano Santiago (en adelante, "juez Serrano Santiago"). Surge del expediente que, en dicha ocasión, no se celebró la vista en cuestión, toda vez que el Ministerio Público solicitó una enmienda a la denuncia.

En específico, el Estado alegó que, tras verificar el contenido del referido documento, se percató que éste establecía una violación al Art. 2.8 y no al Art. 3.1 de la Ley Núm. 54, *infra*, de manera que entendió que hubo un error tipográfico en el título del mismo. De conformidad con ello,

---

[1] Durante la referida la vista, la jueza Vélez Carreras expresó en dos ocasiones que una violación al Art. 3.1 de la Ley Núm. 54, *infra*, no conllevaba supervisión electrónica. Véase, *Informe de la Comisión de Disciplina Judicial*, págs. 20-21.

[2] El PSAJ tiene la responsabilidad de investigar y evaluar a toda persona imputada de ciertos delitos, a los fines de ofrecer recomendaciones a los tribunales en cuanto a la posibilidad de decretar la libertad provisional de la persona, y la fijación de los términos y condiciones de fianza correspondiente. Véase, Art. 24 del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, también conocido como el *Plan de reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII, Art. 24, (en adelante, "Plan de Reorganización de 2011").

el juez Serrano Santiago procedió a eliminar lo alusivo a la violación de la orden de protección y certificó lo correspondiente a la conducta constitutiva de maltrato psicológico.[3] Asimismo, las partes acordaron que la vista preliminar de rigor se celebraría el 28 de febrero de 2024 en horas de la tarde.

**Ahora bien, ese mismo día, a las 4:55 p.m. y culminada la vista antes mencionada, el Ministerio Público presentó una *Moción urgente en solicitud de imposición de supervisión electrónica*. En virtud de ésta, el Estado advirtió que el imputado tenía convicciones previas por delitos de similar naturaleza que culminaron en sentencia de cárcel. Por consiguiente, argumentó que la supervisión electrónica era una condición obligatoria que tenía que imponer el tribunal al momento de conceder la fianza y así lo solicitó.**

**Desafortunadamente, dicha moción no fue atendida a tiempo. En horas de la noche del 24 de enero de 2024, el señor Santiago Figueroa asesinó a la señora Morales Vázquez, a su madre, la Sra. Lizzette Vázquez Vélez, y a su hermano. Posteriormente, éste se privó de la vida.**

A raíz del lamentable incidente, la OAT le encomendó a la Oficina de Asuntos Legales de dicho organismo (en adelante, "OAL") llevar a cabo una evaluación exhaustiva de los procesos judiciales con relación al caso de la señora Morales Vázquez. Esto, con la finalidad de indagar el desempeño oficial de las

---

[3] Surge del expediente ante nuestra consideración que la jueza Vélez Carreras acordó realizar el referido cambio a la denuncia, pero ello no ocurrió. Véase, *Informe de la Comisión de Disciplina Judicial*, pág. 21.

y los funcionarios que tuvieron injerencia en este asunto, -- entre ellos, la jueza Vélez Carreras --, fijar responsabilidades, e identificar posibles soluciones para agilizar la tramitación de los casos al amparo de la Ley Núm. 54, *supra*.

Enterada de lo anterior, el 8 de febrero de 2024 la jueza Vélez Carreras compareció ante la OAL mediante comentarios por escrito. En síntesis, la referida magistrada narró que, a base de una evaluación de la prueba desfilada ante sí en la vista de causa probable para arresto en cuestión, entendió que estaban presentes los elementos para encontrar causa por el Art. 3.1 y no por el 2.8 de la Ley Núm. 54, *infra*. Explicó que, bajo dicho articulado, no era mandatorio imponer la condición de supervisión electrónica, pues no se trajeron ante su consideración incidentes violentos o de amenaza que la llevaran a emitir una decisión en contrario.

Con relación al *Informe de evaluación y recomendaciones* del PSAJ que debía examinar, la jueza Vélez Carreras alegó que el mismo tenía un contenido distinto al que se le mostró en la vista, pues, a su mejor recuerdo, el original no contenía la frase "cárcel concurrente", ni la siguiente oración: "sistema de búsquedas de Antecedentes Penales arroja Sentencia por cárcel por violación al 122.3; Artículo 231 y Artículo 3.1 de la Ley 54 con Sentencia Total y concurrente entre sí de 10 años".[4]

---

[4] Véase, *Informe* de la OAL, pág. 56.

Así pues, la mencionada magistrada sostuvo que se amparó en la discreción judicial que le cobijaba para emitir su determinación. A tales efectos, y describiendo esta situación como la más impactante y dolorosa de su carrera, estimó que no incurrió en violación a las normas de disciplina judicial o en conducta antiética que ameritase iniciar un proceso disciplinario en su contra.

Por su parte, el 15 de julio de 2024 la OAL sometió el correspondiente *Informe de investigación*. En lo pertinente, dicha oficina concluyó que contaba con prueba clara, robusta y convincente para promover un proceso disciplinario ante la Comisión de Disciplina Judicial en contra de la jueza Vélez Carreras por posible violación a los Cánones 1, 3, 8 y 17 de Ética Judicial, *infra*. A su entender, la referida magistrada se apartó de sus obligaciones éticas en la medida en que falló en actuar con la competencia, responsabilidad, diligencia y cuidado exigido en la aplicación y cumplimiento del derecho vigente en materia de violencia doméstica.

**En específico, la OAL encontró que la jueza Vélez Carreras demostró que no conocía o no consideró que, como cuestión de derecho, era obligatorio imponer al señor Santiago Figueroa la condición de supervisión electrónica por tratarse de un convicto reincidente por delitos bajo la Ley Núm. 54, *supra*. Tal incumplimiento, a su juicio, era contrario a los Cánones 1, 3 y 8 de Ética Judicial, *infra*.**

**De igual forma, dicha oficina concluyó que la jueza Vélez Carreras tampoco ejerció la diligencia requerida por el Canon**

**17 de Ética Judicial, *infra*. Lo anterior, pues ésta no examinó ni consideró el contenido del *Informe de evaluación y recomendaciones* del PSAJ, el cual la hubiese colocado en posición de conocer el historial delictivo del imputado.**

Evaluado el *Informe de investigación* de la OAL, el 16 de julio de 2024 la Comisión de Disciplina Judicial emitió una *Determinación administrativa*. Mediante la misma, designó a la Lcda. Nélida Jiménez Velázquez (en adelante, "licenciada Jiménez Velázquez") para que, dentro de un término de quince (15) días, determinase si existía o no causa probable para presentar una querella en contra de la jueza Vélez Carreras.

De conformidad con dicha encomienda, el 23 de julio de 2024 la licenciada Jiménez Velázquez presentó ante la Comisión de Disciplina Judicial una *Resolución.* En la misma, la mencionada letrada concluyó que existía causa probable para iniciar un proceso formal en contra de la jueza Vélez Carreras por presuntas violaciones a los Cánones 1, 3, 8 y 17 de Ética Judicial, *infra*.

**Así pues, y luego de ciertos trámites procesales no necesarios aquí pormenorizar, el 15 de agosto de 2024 la OAT presentó ante la Comisión de Disciplina Judicial la correspondiente *Querella*. En la misma, y, en síntesis, dicha oficina determinó que la jueza Vélez Carreras se apartó de las obligaciones éticas que debían regir sus ejecutorias. Según su análisis, las actuaciones de ésta evidenciaron un craso desconocimiento o inobservancia de las disposiciones legales aplicables en materia de fianza y de las condiciones a imponer**

**para salvaguardar la seguridad de las víctimas en casos bajo**

**la Ley Núm. 54,** *supra*.

A tales efectos, dicha dependencia le imputó a la jueza

Vélez Carrearas los siguientes cargos:

### Primer Cargo

La jueza Vélez Carreras incurrió en negligencia crasa y, por ende, descuidó los deberes y funciones de su cargo en el contexto de un caso de violencia doméstica, cuando incumplió con la obligación legal que le exigía imponer -sin margen de discreción alguna- la medida de supervisión electrónica al señor Santiago [Figueroa] como condición a la libertad bajo fianza que le concedió en la vista de causa probable para arresto (Regla 6) celebrada el 10 de enero de 2024. Con ello demostró un claro desconocimiento y menosprecio por el estado de derecho vigente que así lo requería en casos de reincidencia por delitos bajo la Ley [Núm.] 54. De esta forma, la Querellada se condujo en contravención a los **Cánones 1, 3 y 8** de Ética Judicial.

### Segundo Cargo

La jueza Vélez Carreras desplegó falta de diligencia y cuidado, y con ello demostró falta de competencia en el desempeño de los deberes y las funciones de su cargo, al no examinar o considerar, como era debido, el contenido del *Informe Confidencial (Informe de Evaluación y Recomendaciones)* que generó el PSAJ para la vista de Regla 6 que presidió en el caso del señor Santiago [Figueroa]. De dicho Informe se desprendía claramente los antecedentes penales y el historial por delitos de violencia doméstica del imputado, así como el carácter mandatorio de la supervisión electrónica que ameritaba imponer bajo esas circunstancias. De este modo, la Querellada infringió los **Cánones 8 y 17** de Ética Judicial.

De conformidad con ello, la OAT solicitó que se declarase con

lugar la *Querella* y recomendó que se impusiera la sanción

disciplinaria correspondiente.

**Por su parte, el 19 de septiembre de 2024 la jueza Vélez**

**Carreras presentó ante la Comisión de Disciplina Judicial la**

**correspondiente *Contestación a querella*. En ésta, la referida magistrada comenzó por destacar la tragedia alrededor de la cual gira el presente proceso disciplinario. Asimismo, <u>reconoció su error</u>, el cual catalogó como uno de derecho. Sostuvo, también, que su actuación no fue intencional ni arbitraria.**

De igual forma, la jueza Vélez Carreras argumentó que, en la vista de causa probable para arresto en cuestión, no pudo advertir por sí la posibilidad de condiciones de peligrosidad, pues los testigos ni el Ministerio Público así lo indicaron. Finalmente, la referida magistrada señaló que este proceso le ha servido para mejorar como profesional y sensibilizarse en el ejercicio de su función judicial. Así pues, la jueza Vélez Carrera solicitó el archivo de la *Querella*, previa censura y apercibimiento.

Recibida la mencionada *Querella* y demás comparecencias, la Comisión de Disciplina Judicial[5] dio inicio a los trámites de rigor. Durante ese proceso, las partes acordaron someter el caso para su adjudicación sin necesidad de la celebración de una vista en su fondo. En la alternativa, presentaron estipulaciones de hechos y prueba documental, así como sus respectivos memorandos de hechos y de derecho.

---

[5] Compuesta por su presidenta, la Lcda. Lourdes V. Velázquez Cajigas, y las y los Comisionados Asociados: Lcda. Aleida Varona Méndez, Lcda. Ygrí Rivera Sánchez, Lcda. Nélida Jiménez Velázquez (en adelante, "licenciada Jiménez Velázquez"), Lcda. Evelyn Benvenutti Toro (en adelante, "licenciada Benvennutti Toro"), Lcdo. Reinaldo O. Catinchi Padilla (en adelante, "licenciado Catinchi Padilla"), Lcdo. Jorge L. Toledo Reyna (en adelante, "licenciado Toledo Reyna") y el Dr. Juan Salgado Morales (en adelante, "doctor Salgado Morales"). **La licenciada Jiménez Velázquez estuvo inhibida de participar en el caso por haber sido la Comisionada que intervino en la determinación de causa probable. La licenciada Benvennutti Toro y el doctor Salgado Morales no intervinieron.**

En cuanto a esto último, y en específico, el 10 de marzo de 2025 la OAT compareció ante la Comisión de Disciplina Judicial mediante un *Memorando de derecho de la Oficina de Administración de los Tribunales*. En el mismo, dicha parte sostuvo que la jueza Vélez Carreras pasó por alto los antecedentes criminales y el riesgo de peligrosidad que poseía el señor Santiago Figueroa. A su juicio, procedía la imposición de una medida disciplinaria en contra de la magistrada, por la crasa negligencia y el descuido incurrido en el manejo de la vista de causa para arresto, incompatible con las funciones y deberes de su cargo.

Por su parte, el 10 de marzo de 2025 la jueza Vélez Carreras presentó ante la Comisión de Disciplina Judicial su *Memorando de hechos y de derecho*. En el mismo, la referida magistrada insistió en que su actuación no constituyó un acto intencional, sino una inadvertencia que no justificaba la imposición de disciplina profesional. De igual forma, enfatizó la concurrencia de actuaciones de ésta y del Ministerio Público; en específico, mencionó que su determinación no fue objetada, reconsiderada, ni corregida por el Estado.

**Evaluados los referidos escritos, la prueba sometida y la normativa legal aplicable, el 21 de mayo de 2025 la Comisión de Disciplina Judicial emitió el correspondiente *Informe.* En éste, dicho cuerpo concluyó que la jueza Vélez Carreras se apartó de las obligaciones legales preceptuadas en los Cánones 1, 3, 8 y 17 de Ética Judicial, *infra*.**

En particular, la Comisión de Disciplina Judicial destacó que la referida magistrada, a pesar de haber tenido el informe del PSAJ ante sí, no lo tomó en consideración, por lo cual se condujo de forma negligente en el cumplimiento de su cargo y evidenció su desconocimiento del estado de derecho vigente. Señaló, además, que la ineficiencia del trabajo del Ministerio Público en este caso no justificaba la inobservancia de las normas jurídicas por parte de la jueza Vélez Carreras. A la luz de lo anterior, dicho cuerpo recomendó la suspensión de esta última por un término de tres (3) a seis (6) meses.[6]

Así las cosas, el 16 de junio de 2025 la OAT presentó ante este Tribunal su *Comparecencia en torno a la recomendación emitida por la Comisión de Disciplina Judicial al amparo de la Regla 30(A) de las Reglas de Disciplina Judicial*. En su escrito, dicha oficina afianzó las conclusiones a las que llegó la Comisión de Disciplina Judicial en su *Informe*, respecto a la negligencia crasa e incompetencia profesional de la jueza Vélez Carreras en el desempeño de sus deberes. De esta forma, nos solicitó que confirmáramos las determinaciones de hecho y conclusiones de derecho esbozadas por dicho cuerpo.

---

[6] Cabe destacar que el licenciado Catinchi Padilla recomendó una censura enérgica acompañada de una amonestación, y que se le ordenara a la jueza Vélez Carreras recibir adiestramiento en todas las áreas esenciales de la Ley Núm. 54, *supra*.

Por su parte, el licenciado Toledo Reyna, emitió un voto disidente en parte y concurrente en parte, en la cual como sanción recomendó una censura enérgica. En síntesis, éste sostuvo que, a su juicio, las violaciones a los Cánones 1, 3 y 17 de Ética Judicial, *infra*, no se probaron mediante el estándar de prueba clara, robusta y convincente. Es decir, el licenciado Toledo Reyna entendió que solo se configuró la violación del Canon 8 de Ética Judicial, *infra*.

Finalmente, -- y denegada la correspondiente solicitud de reconsideración --, el 7 de julio de 2025 la jueza Vélez Carreras presentó ante nos su *Comparecencia al amparo de la Regla 30(a) de las Reglas de Disciplina Judicial*. En su escrito, la referida magistrada reiteró sus argumentos. Así pues, nos solicitó el archivo de la causa de marras previa censura y apercibimiento de rigor.

Como adelantamos, una mayoría de este Tribunal, **-- al articular una crítica severa e innecesaria al proceder de la OAT y los demás organismos encargados de la investigación correspondiente, <u>de la cual no se tiene prueba alguna</u> --,** concluye que las acciones de la jueza Vélez Carreras no ameritan sanción disciplinaria alguna, por entender que la conducta de esta última constituyó un mero error de derecho.[7] No coincidimos con dicha apreciación.

**A nuestro juicio, las actuaciones de la referida magistrada revelan, -- más que una simple equivocación --, negligencia crasa en el desempeño de sus funciones. Tal conducta no puede excusarse como un desacierto aislado ni quedar inmune a consecuencia disciplinaria alguna.**

Procedamos, pues, a esbozar nuestros fundamentos para disentir de la decisión que hoy se toma.

---

[7] De igual forma, la *Opinión* mayoritaria concluye que la OAT no tenía autoridad para iniciar la queja que dio paso al procedimiento disciplinario de epígrafe. Sobre el particular, basta con mencionar que somos del criterio que dicha oficina, en virtud de la autoridad que le confieren las Reglas de Disciplina Judicial, *infra*, sí tenía el poder de comenzar la investigación en cuestión.

II.

A.

Como es sabido, en virtud de lo dispuesto tanto en la Constitución del Estado Libre Asociado de Puerto Rico, como en la Ley Núm. 201-2003, también conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 2 *et seq.* (en adelante, "Ley de la Judicatura"), este Tribunal posee autoridad exclusiva para atender los procedimientos disciplinarios relacionados a la conducta de las juezas y los jueces de los Tribunales de Primera Instancia y del Tribunal de Apelaciones. Art. V, Sec. 11, Const. ELA, LPRA, Tomo 1; Art. 2.003 de la Ley de la Judicatura, 4 LPRA sec. 24d; *In re Quiñones Capacetti*, 195 DPR 281, 286 (2016); *In re Quiñones Artau*, 193 DPR 356, 376 (2015). Así pues, como corolario de tal potestad, aprobamos los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, los cuales "dirigen la conducta de jueces y juezas en nuestro Sistema Judicial". *In re Acevedo Hernández*, 194 DPR 344, 359 (2015).

En términos generales, el referido cuerpo deontológico constituye una guía de los deberes mínimos que las togadas y los togados de nuestro País deben cumplir, con el propósito de promover la confianza de la ciudadanía en los tribunales. *In re Lugo Irizarry*, 207 DPR 1032, 1045-1046 (2021); *In re Quiñones Artau*, *supra*, pág. 376; *In re Sierra Enríquez*, 185 DPR 830, 850 (2012). Lo anterior, pues, éstas y éstos "son el reflejo de nuestro sistema judicial y su conducta, al igual que sus expresiones, inciden en la percepción que tiene la

ciudadanía sobre los tribunales en general". *In re Benero García*, 202 DPR 318, 377 (2019).

Cónsono con ello, el Preámbulo de los Cánones de Ética Judicial señala, entre otras cosas, que la normativa allí expuesta "habr[á] de garantizar el eficiente desempeño de las juezas y los jueces, al estimularlos a ser laboriosas y laboriosos, imparciales, prudentes, serenas y serenos, sensibles, estudiosas continuas y estudiosos continuos del Derecho, y cuidadosas y cuidadosos en la interpretación de la ley". *In re Aprobación Cánones Ética Judicial* 2005, 164 DPR 403, 409 (2005).

Establecido lo anterior, y ya más en lo pertinente al asunto que nos concierne, el **Canon 1** de Ética Judicial, 4 LPRA Ap. IV-B, C.1, dispone que las togadas y los togados respetarán y cumplirán la ley, y serán fieles al juramento de su cargo. Según hemos reseñado en el pasado, este precepto plasma "la idea de que las juezas y los jueces no están por encima de la ley y son los primeros obligados a respetarla y cumplirla". *In re Aprobación Cánones Ética Judicial* 2005, *supra*, pág. 411.

En ese sentido, conforme al precitado canon éstas y éstos vienen llamadas y llamados a desplegar un comportamiento ejemplar dentro y fuera del tribunal. *In re Quiñones Capacetti*, *supra*, págs. 294-295; *In re Quiñones Artau*, *supra*, pág. 376. Véase también *In re Hon. Maldonado Torres*, 152 DPR 858, 867 (2000). En otras palabras, a las juezas y los jueces se les exige un comportamiento que "manifieste entereza,

convicción e imparcialidad tanto en su vida pública como en su vida privada". *In re Grau Acosta*, 172 DPR 159, 171 (2007).

Cabe destacar aquí que el historial del Canon 1 de Ética Judicial, *supra*, evidencia que el mismo está inspirado en la obligación que impone el juramento de fidelidad y toma de posesión que prestan las y los miembros del sistema judicial respecto a "defender y obedecer las leyes sin reserva mental ni propósito de evadirla […] [y] desempeñar fielmente los deberes de su cargo". *In re Candelaria Rosa*, 197 DPR 445, 464-465 (2017). **En suma, la referida disposición recoge el principio general de que "respetar y cumplir con la ley […] emerge como uno de los compromisos ineludibles para cada miembro de la Judicatura".** *In re González Rodríguez*, 201 DPR 174, 216 (2018).

De otra parte, el **Canon 3** de Ética Judicial, 4 LPRA Ap. IV-B, C.3, dispone que los deberes judiciales tendrán prioridad sobre cualquier otra actividad, por lo que las juezas y los jueces no abandonarán ni descuidarán las obligaciones de su cargo. Véase también, *In re Benero García*, *supra*, pág. 377; *In re Candelaria Rosa*, *supra*, pág. 466. **Según surge de los comentarios a dicha norma, y en lo atiente al caso ante nos, esta obligación requiere que los miembros de la Judicatura se mantengan competentes, y aumenten sus conocimientos y habilidades, a la luz de los recursos disponibles que se ofrezcan en la Academia Judicial.** *In re Aprobación Cánones Ética Judicial* 2005, *supra*, pág. 412.

A su vez, el **Canon 8** de Ética Judicial, 4 LPRA Ap. IV-B, C.8, reza de la siguiente forma:

> Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosas y laboriosos, prudentes, serenos e imparciales. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.
>
> La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. *Íd.*

Como se puede apreciar, de la precitada disposición deontológica se desprende, en primer lugar, que la comunidad togada viene llamada a actuar de forma independiente e imparcial. Por un lado, el sentido de independencia busca que las juezas y los jueces "resuelvan los asuntos que se les plantean a partir del derecho, sin que consideraciones ajenas a [éstas y éstos] o a la prueba que se les presenta determinen la respuesta a una controversia". S. Steidel Figueroa, *Ética para juristas: Ética Judicial y Responsabilidad Disciplinaria*, 1ra ed., San Juan, Ediciones SITUM, pág. 71. De otro lado, la imparcialidad les exige "emitir sus decisiones sin mostrar parcialidad a favor de alguna de las partes [...] y a evitar conducirse en su vida profesional y en su vida privada de una

manera que creen la apariencia de que no son imparciales en las causas en las que intervienen". *Íd*. pág. 73.

**En segundo lugar, la precitada norma requiere que las togadas y los togados sean proactivos en cuanto a su formación como juristas y su rol al atender una controversia.** *Íd*. pág. 83. **En específico, surge de los comentarios del Canon 8 de Ética Judicial,** *supra*, **que éstos y éstas tienen el deber de mantenerse al día en el estudio del Derecho, lo cual incluye el aprovechamiento de oportunidades educativas, y el estudio de la jurisprudencia y la nueva legislación.** *In re Aprobación Cánones Ética Judicial* 2005, *supra*, pág. 419. Véase también *In re Benero* García, *supra*, pág. 378; *In re Sierra Enríquez*, *supra*, pág. 851. De igual forma, vienen obligadas y obligados a ser diligentes en el empeño de descubrir los hechos esenciales de cada controversia; es decir, no deben limitarse solo a escuchar, sino que deben intervenir cuando sea oportuno. *In re Aprobación Cánones Ética Judicial* 2005, *supra*, pág. 420.

Por último, el **Canon 17** de Ética Judicial, 4 LPRA Ap. IV-B, C.17, abarca la diligencia que las juezas y los jueces deben prestar en la administración del proceso judicial. Véase, Steidel Figueroa, *op. cit.*, pág. 88. **En particular, el precepto dispone que éstas y éstos "serán diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración y procurarán que las partes también lo sean."** *Íd*.

B.

Establecido lo antes reseñado, cabe mencionar aquí que la Ley de la Judicatura, *supra*, establece que toda jueza y todo juez estará sujeto a la imposición de medidas disciplinarias cuando:

(1) **Incurra en violación** a la ley, **a los Cánones de Ética Judicial**, a los Cánones de Ética Profesional o a la reglamentación administrativa aplicable, cuando medie una determinación final por un foro competente.

(2) **Manifieste negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales**. (Énfasis suplido). Art. 6001 de la Ley de la Judicatura, 4 LPRA sec. 25i.

Como se desprende del precitado articulado, existen dos causales generales por las cuales es posible iniciar una acción disciplinaria en contra de una togada o de un togado. En primer lugar, está aquella conducta que implica una violación a una ley, a los Cánones de Ética Judicial, a los Cánones de Ética Profesional o a la reglamentación administrativa aplicable. En segundo lugar, está aquella conducta que manifiesta negligencia crasa, inhabilidad o incompetencia profesional.

Ahora bien, en cuanto a este último escenario, es importante mencionar que, como regla general, los errores de hecho o de derecho no constituyen fundamento para una acción disciplinaria en contra de una jueza o un juez. *In re Pérez Soto*, 200 DPR 189, 202 (2018); *In re Vicenty Nazario I*, 169 DPR 194, 223 (2006); *In re Díaz García, T.P.I*, 158 DPR 549, 558 (2003); *In re Vélez Collado*, 159 DPR 422, 426 (2003). En

otras palabras, el deber de éstas y éstos de ser cuidadosas y cuidadosos al estudiar y aplicar el derecho, "no debe confundirse con el ejercicio de la discreción judicial ni con un error producto de una interpretación honesta y de buena fe de una disposición legal, pues [las juezas y] los jueces, como humanos, no son infalibles". *In re Vicenty Nazario I*, *supra*, pág. 223. **Además de su falibilidad, se presupone que, en instancias como éstas, -- a saber, cuando se comete un error de hecho o de derecho --, las partes tendrán la oportunidad de revisar la determinación judicial en cuestión.** *In re Pérez Soto*, *supra*; *In re Vicenty Nazario I*, *supra*, pág. 223; *In re Díaz García, T.P.I.*, *supra*, pág. 561.

Por consiguiente, hemos expresado que, para que un error de hecho o de derecho configure una conducta antiética, se requiere demostrar que éste: (1) constituyó un abuso intencional de la discreción judicial; o (2) por su magnitud, refleja conducta impropia o favoritismo hacia algún litigante o su representante legal. *In re Vicenty Nazario I*, *supra*, pág. 223; *In re González Acevedo*, 165 DPR 81, 95 (2005).

C.

Dicho ello, conviene mencionar aquí que, la Ley de la Judicatura, *supra*, a su vez, le delegó a este Tribunal la facultad para diseñar el proceso a seguir para tramitar una acción disciplinaria contra una jueza o un juez. Art. 6.006 de la Ley de la Judicatura, 4 LPRA sec. 25n. A tales fines, se aprobaron las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B.

En síntesis, y en lo pertinente, dicho cuerpo reglamentario dispone que el referido proceso disciplinario se inicia, entre otras formas, con una solicitud del Director o la Directora de la OAT para que se investigue la conducta de una jueza o un juez. 4 LPRA Ap. XV-B, R. 5. Una vez culminada la investigación, la OAL, -- o la persona designada para ello --, procederá entonces a rendir un informe a ser evaluado por la Comisión de Disciplina Judicial, con la finalidad de determinar si existe o no causa probable para presentar una querella en contra de la magistrada o del magistrado. 4 LPRA Ap. XV-B, R. 7, 8, 12 y 13.

Presentada y notificada la querella, la jueza o el juez objeto del proceso disciplinario deberá contestar la misma dentro del término provisto para ello. 4 LPRA Ap. XV-B, R. 14, 16 y 18. Posteriormente, comenzará el proceso de descubrimiento de prueba, el cual culminará, de ordinario, con la celebración de una vista. 4 LPRA Ap. XV-B, R. 21.

Celebrada la vista de rigor, la Comisión de Disciplina Judicial emitirá un informe con su recomendación. 4 LPRA Ap. XV-B, R. 28. Una vez completado el referido proceso, el caso quedará sometido para su adjudicación por parte de este Tribunal. Véase, 4 LPRA Ap. XV-B, R. 30.

Así pues, luego de estudiar el expediente ante nuestra consideración, esta Curia deberá evaluar si los cargos presentados quedaron probados mediante prueba clara, robusta y convincente. 4 LPRA Ap. XV-B, R. 26. De quedar probados, debemos entonces considerar si procede la imposición de alguna

de las medidas disciplinarias enumeradas en la Regla 29 del precitado cuerpo reglamentario. 4 LPRA Ap. XV-B, R. 29. Véase también, *In re Sierra Enríquez*, *supra*, pág. 853.

Al realizar ese ejercicio, debemos tener presente que las determinaciones de hechos presentadas por la Comisión de Disciplina Judicial o por un Comisionado Especial merecen nuestra deferencia. *In re González Rodríguez*, *supra*, pág. 207; *In re Candelaria Rosa*, *supra*, pág. 459; *In re Acevedo Hernández*, *supra*, pág. 364. Lo anterior, salvo que "medie pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba". (Énfasis suprimido). *In re Sierra Enríquez*, *supra*, pág. 853.

## III.

### A.

Ahora bien, expuesta la normativa deontológica aplicable al presente proceso disciplinario, -- y toda vez que la causa de epígrafe surgió a raíz de un caso de violencia doméstica --, entendemos necesario, para el más cabal entendimiento de los asuntos ante nuestra consideración, evaluar algunas disposiciones de la ley que gobierna dicha materia. **En particular, debemos auscultar en qué instancias de violencia doméstica nuestro ordenamiento jurídico requiere imponer, adicional a la fianza, la condición de supervisión electrónica.**[8]

---

[8] Recordemos que, de conformidad con las Reglas 6.1(b) y 218(a) y (c) de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.1 y R. 218, en casos de delitos graves o menos graves en que hubiere derecho a juicio por jurado, el tribunal, junto con la fianza, podrá imponer condiciones tales como la supervisión electrónica.

De entrada, debemos recordar aquí que la Ley Núm. 54, *supra*, se aprobó en reconocimiento de que la violencia doméstica es uno de los problemas más patentes y graves que confronta nuestro País. Art. 1.2 de la Ley Núm. 54, 8 LPRA sec. 601. Véase también, *Exposición de motivos*, Ley Núm. 54, *supra*. Mediante este estatuto, se reiteró el compromiso del Estado en "proteger la vida, la seguridad y la dignidad de hombres y mujeres, independientemente de su sexo, estado civil, orientación sexual, identidad de género o estatus migratorio", frente a esta problemática. Art. 1.2 de la Ley Núm. 54, 8 LPRA sec. 601.

En ese sentido, la Ley Núm. 54, *supra*, instauró como política pública en nuestro País el repudio por la violencia conyugal, por ésta ser contraria a los valores de paz, dignidad y respeto. Art. 1.2 de la Ley Núm. 54, 8 LPRA sec. 601. En virtud de dicha política pública, las instituciones gubernamentales han intentado propiciar el desarrollo, establecimiento y fortalecimiento de, entre otros, remedios eficaces para proteger y ayudar a las víctimas. *Íd.*

Dentro de estos remedios, el Art. 2.1 de la Ley Núm. 54, *infra*, provee para la solicitud de órdenes de protección. En específico, el precitado artículo dispone que cualquier persona de dieciocho años (18) o más, que haya sido víctima de violencia doméstica en el contexto de una relación de pareja, puede solicitar una orden de protección, sin necesidad de la radicación previa de una denuncia o acusación. 8 LPRA sec. 621.

A su vez, el Art. 2.5 de la Ley Núm. 54, *infra*, establece que el tribunal podrá emitir una orden de protección de forma *ex parte* si, entre otros factores, la parte peticionaria demuestra que existe una probabilidad sustancial de riesgo inmediato de maltrato. 8 LPRA sec. 625. En tales instancias, el tribunal expedirá la orden con carácter provisional, le notificará inmediatamente a la parte peticionada y señalará una vista a celebrarse, de ordinario, dentro de los próximos veinte (20) días de haberse expedido la mencionada orden. *Íd.* Durante esta vista, el foro adjudicador podrá dejar sin efecto la orden o extender los efectos de la misma por el término que estime necesario. *Íd.*

**Ahora bien, y ya más en lo relacionado a la causa disciplinaria que nos ocupa, la Ley Núm. 54, *supra*, dispone que el incumplimiento con una orden de protección constituye delito grave.** Art. 2.8 de la Ley Núm. 54, 8 LPRA sec. 628. <u>**En estos casos, el referido estatuto establece expresamente que los tribunales vendrán obligados a imponer supervisión electrónica, de concederse cualquier tipo de sentencia suspendida**</u>. *Íd.*

B.

De otra parte, -- y en estrecha relación con los asuntos objeto de estudio en el presente proceso disciplinario --, el Art. 3.1 de la Ley Núm. 54, *infra*, enmarca el tipo de conducta que, en escenarios como los aquí evaluados, se considera maltrato. 8 LPRA sec. 631. En específico, dicha disposición establece lo siguiente:

**Toda persona que empleare fuerza física o violencia psicológica o económica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual,** o la persona con quien haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, al animal de compañía o mascota de la víctima, de los hijos o del victimario, a los bienes apreciados por esta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro o para causarle grave daño emocional, **incurrirá en delito grave de cuarto grado en su mitad superior.** (Énfasis suplido). *Íd.*

Como surge del precitado artículo, la Ley Núm. 54, *supra*, también tipifica como delito grave aquella conducta constitutiva de maltrato. No obstante, -- y diferente a lo que ocurre con el incumplimiento con una orden de protección --, nada se dispone respecto a la pena y/o condiciones adicionales que aplican ante la imputación de este delito.

C.

Por otro lado, la Ley Núm. 54, *supra*, establece ciertas directrices a seguir al momento de imponer el mecanismo de la fianza y condiciones adicionales, como la supervisión electrónica. En particular, el inciso (a) del Art. 3.7, *infra,* dispone:

(a) Fianza. — Cuando una persona sea acusada por violación a las disposiciones de esta ley o cuando al momento de la alegada violación estuviere sujeta a los términos de una orden de protección expedida de conformidad con esta ley o cualquier otra ley similar, o hubiere sido convicta previamente de o hubiere hecho alegación de culpabilidad por violación a las disposiciones de esta ley o de violación a cualquier otra disposición legal similar, antes

de señalar la fianza; además de lo dispuesto por las Reglas de Procedimiento Criminal, […] **el tribunal deberá considerar al imponer la fianza si la persona tiene historial de haber violado órdenes de un tribunal o de una agencia gubernamental.** (Énfasis suplido). 8 LPRA sec. 637.

Asimismo, el inciso (b) del mismo artículo establece lo siguiente:

(b) Condiciones para libertad bajo fianza. — **El tribunal impondrá al acusado condiciones a la fianza y deberá tomar en consideración si la persona cuenta con un historial de violencia doméstica o un historial de comisión de actos violentos y si la persona representa una amenaza potencial para la víctima del delito o para cualquier persona.** (Énfasis suplido). *Íd.*

**De todo lo anterior podemos colegir que las juezas y los jueces venimos obligados, al momento de imponer la fianza y condiciones adicionales, a considerar**: (1) el historial de la persona acusada en cuanto a la violación de órdenes de un tribunal o una agencia gubernamental; (2) **el historial de la persona acusada en cuanto a actos constitutivos de violencia doméstica o de naturaleza violenta**; y (3) **si la persona acusada representa una amenaza potencial para la víctima o para alguien más.**

D.

Por último, es necesario destacar aquí que la Ley Núm. 99-2009, también conocida como la *Ley para crear el Programa de vigilancia, protección y prevención de violencia doméstica*, 8 LPRA sec. 668 *et seq.* (en adelante, "Ley Núm. 99-2009"), se creó ante el interés del Estado de realizar una transformación social e institucional que atendiese la alta incidencia de

muertes por violencia doméstica. *Exposición de motivos*, Ley Núm. 99-2009, *supra*. **En lo pertinente, dicho estatuto pretendió establecer como política pública que, en ciertos casos de incumplimiento con la Ley Núm. 54, *supra*, se fomentase la utilización de supervisión electrónica para las personas imputadas.** *Íd.*

En particular, -- y al momento de los hechos que dieron margen al proceso disciplinario de epígrafe --,[9] el Art. 2 de la Ley Núm. 99-2009, *infra*, establecía lo siguiente:

> La Oficina de Servicios con Antelación al Juicio (OSAJ)[10] recomendará a los tribunales, en su informe de evaluación, la imposición de supervisión electrónica como condición adicional y obligatoria al momento de conceder la fianza en el caso en que se le impute a una persona la comisión de un delito

---

[9] El 8 de agosto de 2023 se aprobó la Ley Núm. 89-2023, a los fines de enmendar la Ley Núm. 99-2009, *supra*, para que, entre otras cosas, se le proveyese a las víctimas de violencia doméstica una aplicación de detección electrónica de la persona agresora. En lo pertinente, y a raíz de dichos cambios, el Art. 3 de la Ley Núm. 99-2009, *infra*, lee actualmente de la siguiente forma:

> El Programa de Servicios con Antelación al Juicio (PSAJ) recomendará a los tribunales, en su informe de evaluación, la imposición de supervisión electrónica como condición adicional y obligatoria al momento de conceder la fianza en el caso en que se le impute a una persona la comisión de un delito de violencia doméstica. Los tribunales ordenarán que se le provea a la víctima una aplicación tecnológica para la detección del agresor dentro de la distancia dispuesta por la orden, que opera a través del Sistema de Posicionamiento Global conocido por sus siglas en inglés como GPS, o cualquier otra tecnología que cumpla con estos fines, para ser usada en teléfonos, relojes inteligentes, o cualquier otro aparato similar con esta tecnología. La aplicación se limitará solamente a advertir a la víctima que el agresor se encuentra dentro del parámetro establecido por la orden, cuando el agresor esté dentro de dicho parámetro. No ofrecerá ninguna otra información o datos ni del agresor ni de la víctima. 8 LPRA sec. 668a.

Como se puede apreciar, mediante esta enmienda, se eliminó el mandato a los tribunales de imponer supervisión electrónica en casos de reincidencia. Cabe destacar que los cambios incorporados por la referida Ley Núm. 89-2023 entraron en vigor en febrero de 2024, entiéndase, posterior a los hechos que dieron margen al procedimiento disciplinario de epígrafe.

[10] Mediante el Plan de Reorganización de 2011, *supra*, dicha oficina fue sustituida por el PSAJ.

de violencia doméstica, cuando se trate específicamente de aquellos casos relacionados con violaciones a órdenes de protección, maltrato agravado, privación de libertad y agresiones sexuales. **Por lo tanto, disponiéndose que los tribunales vendrán obligados a imponer supervisión electrónica** en los casos de incumplimiento a los Artículos 2.8, 3.2, excepto el inciso (d), 3.4 y 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica", **o en caso de reincidencia de la anterior citada Ley, irrespectivamente del artículo que se haya incumplido, con o sin recomendación del PSAJ**. (Énfasis suplido). 8 LPRA sec. 668a.

Como se puede apreciar, y según se desprende del texto citado, en el momento en que se desarrollaron los hechos que dieron margen al presente proceso disciplinario, los tribunales venían obligados a imponer la condición de supervisión electrónica en casos de violaciones a órdenes de protección, maltrato agravado, privación de libertad y agresiones sexuales. **A su vez, se requería imponer dicho mecanismo en casos de reincidencia, independientemente del artículo de la Ley Núm. 54, *supra*, violado.**[11]

Es precisamente, a la luz del marco jurídico antes expuesto, que procedemos, desde la disidencia, a disponer de los asuntos que nos ocupan.

---

[11] Además de las disposiciones relacionadas a la Ley Núm. 54, *supra*, y la Ley Núm. 99-2009, *supra*, la Regla 218(a) de las de Procedimiento Criminal, 34 LPRA Ap. II., R. 218, dispone que en los casos en que se imputen, entre otros delitos, violaciones a la Ley Núm. 54, *supra*, además de fijar la fianza correspondiente, el tribunal tendrá que imponer la condición de supervisión electrónica, conforme al procedimiento establecido en dicha regla. Asimismo, se establece que el tribunal contará con el informe de evaluación y recomendación del PSAJ, a los fines de determinar la cuantía de la fianza y la imposición de condiciones adicionales. *Íd.*

IV.

Como mencionamos anteriormente, en lo relacionado al presente proceso disciplinario, la Comisión de Disciplina Judicial, -- quien tuvo la oportunidad de recibir la prueba pertinente, evaluarla detenidamente, y realizar sus determinaciones de hechos y conclusiones de derecho --, concluyó que la jueza Vélez Carreras se apartó de los Cánones 1, 3, 8 y 17 de Ética Judicial, *supra*. A juicio de dicho organismo, la prueba evaluada evidenció un craso desconocimiento o inobservancia, por parte de la referida magistrada, de las disposiciones legales aplicables en materia de fianza y de las condiciones a imponer para salvaguardar la seguridad de las víctimas en casos relacionados a la Ley Núm. 54, *supra*. Coincidimos con dicha apreciación.

Aun cuando una mayoría de este Tribunal caracteriza la actuación de la jueza Vélez Carreras como un mero error de derecho y enfatiza la ausencia de intención indebida o motivación impropia, ello no dispone de la controversia disciplinaria ante nuestra consideración. El incumplimiento de deberes básicos de diligencia, competencia y conocimiento del derecho vigente, -- particularmente en un ámbito regido por mandatos legales claros --, puede, por sí solo, constituir conducta sancionable bajo nuestros Cánones de Ética Judicial, *supra*.

Y es que, un estudio desapasionado y detallado del expediente ante nuestra consideración demuestra, en primer lugar, que la jueza Vélez Carreras infringió los **Cánones 1, 3**

**y 8** de Ética Judicial, *supra*. Lo anterior, al ésta incumplir con su obligación legal de imponer, <u>**sin margen de discreción alguna**</u>, la medida de supervisión electrónica al señor Santiago Figueroa, como condición adicional a la libertad bajo fianza. Ello, toda vez que este último era un convicto reincidente por delitos bajo la Ley Núm. 54, *supra*.

En segundo lugar, la prueba recopilada como parte del presente proceso disciplinario reveló que la jueza Vélez Carreras no solo faltó a su deber de conocer y defender el estado de derecho vigente al momento de los hechos, sino que también faltó a la diligencia y cuidado que requiere su puesto. Esto, debido a que la referida magistrada no examinó, con la debida cautela, el *Informe de Evaluación y Recomendaciones* del PSAJ. De haberlo hecho, ésta se hubiese percatado de los antecedentes penales del señor Santiago Figueroa, lo cual era indispensable para el ejercicio responsable de su función judicial. Tal omisión constituye, a todas luces, una infracción a los **Cánones 8 y 17** de Ética Judicial, *supra*.

Cabe señalar que el hecho de que el Ministerio Público no haya cumplido cabalmente con su deber, -- como señala una mayoría de mis compañeras y compañeros de estrado --, al no alertar al tribunal sobre los antecedentes penales del imputado ni impugnar la determinación emitida, no exime a la jueza Vélez Carreras de las responsabilidades inherentes a su cargo. La función judicial conlleva un deber independiente de conocer y aplicar el derecho vigente.

Por último, no podemos concluir este escrito sin atender un aspecto que la mayoría procura desvincular del análisis disciplinario: el contexto en el cual se enmarca este caso. A diferencia de lo que allí se plantea, no es posible abstraer estas circunstancias del examen de la conducta aquí evaluada.

Es innegable la crisis de violencia doméstica que atraviesa el País. En ese escenario, los tribunales, -- como pieza esencial en la protección de las víctimas --, vienen obligados a asegurar, en todos sus niveles, el manejo más riguroso y cuidadoso de este tipo de casos.

En esa dirección, nuestra postura no se fundamenta en promover decisiones judiciales basadas en el miedo o desvinculadas del derecho. Por el contrario, responde a la exigencia de que quienes ejercen la función judicial en este ámbito lo hagan con el mayor grado de diligencia, atención y conocimiento del marco legal aplicable. Ello cobra aún mayor relevancia cuando se reconoce que este no es el primer caso en que se evidencian fallas en la respuesta institucional ante situaciones de esta naturaleza.

**En suma, la omisión de la jueza Vélez Carreras no puede entenderse como una adjudicación de responsabilidad sobre las actuaciones posteriores del señor Santiago Figueroa. Sin embargo, tampoco puede ignorarse que, al apartarse de un mandato legal no discrecional, se comprometió la respuesta que el ordenamiento jurídico dispone para este tipo de instancias.**

V.

Por todo lo anterior, no podemos suscribir la conclusión de la mayoría. La conducta desplegada por la jueza Vélez Carreras trasciende el ámbito de un mero error de derecho y constituye una violación a los deberes éticos que rigen la función judicial, la cual ameritaba la más severa de las sanciones.

Por ese no ser el criterio de una mayoría de este Tribunal, respetuosamente disentimos.


Ángel Colón Pérez
Juez Asociado